# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 152

OCTOBER TERM, A.D. 2013

December 11, 2013

JAIME SOLIS,

Appellant
(Defendant),

v.

S-12-0246

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Park County*
The Honorable Steven R. Cranfill, Judge

*Representing Appellant:*
> Office of the State Public Defender:  Diane Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; Kirk A. Morgan, Senior Assistant Appellate Counsel.  Argument by Mr. Morgan.

*Representing Appellee:*
> Gregory A. Phillips, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Theodore R. Racines, Senior Assistant Attorney General; Christyne Martens, Assistant Attorney General.  Argument by Ms. Martens.

*Before KITE, C.J., and HILL, BURKE, DAVIS, JJ., and DEEGAN, D.J.*

NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.

**DEEGAN, District Judge.**

## INTRODUCTION

[¶1]    Appellant appeals his dual convictions by jury for violating Wyo. Stat. Ann. §§ 6-2-303(a)(vi) and 6-2-303(a)(viii) (West 2010), each proscribing, in the disjunctive, Sexual Assault in the Second Degree.[1]  The district court merged the convictions for purposes of sentencing only, imposing concurrent sentences of not less than three (3) nor more than five (5) years incarceration.  Separate financial assessments were imposed in respect of each conviction.

[¶2]    Appellant appeals on the basis of sufficiency of the evidence to establish he was in a position of authority as required by Wyo. Stat. Ann. § 6-2-303(a)(vi), prosecutorial misconduct in two counts and violation of his constitutional right to not be exposed to double jeopardy by the sufferance of two convictions for the same criminal act under disjunctive provisions of one statute.  We affirm in all respects excepting the propriety of permitting two convictions to stand.  In this respect, we reverse and remand for further proceedings in accord with this opinion.

## BACKGROUND

[¶3]    The victim, KO, was a twenty (20) year old freshman at Northwest Community College in Powell, Wyoming on April 15, 2010.  At age fifteen (15), KO was diagnosed by a physician with fibromyalgia and arthritis, conditions which caused her musculoskeletal pain.  Her doctors recommended massage therapy, amongst other modalities, to relieve her pain.  A woman named Marion Bishop administered massage therapy to KO all during her high school years in Thermopolis, Wyoming.  When KO arrived in Powell around September 2009 to attend Northwest Community College, she sought out a new massage therapist.  Upon the advice of a local chiropractor, Jessica Tobin, KO selected Appellant, a forty-five (45) year old man who utilized space in Ms. Tobin's office.  While there was no evidence Appellant was in fact a certified massage

---

[1] Wyo. Stat. Ann. § 6-2-303 provides in pertinent part as follows:

> (a)  Any actor who inflicts sexual intrusion on a victim commits sexual assault in the second degree if, under circumstances not constituting sexual assault in the first degree:
>
> * * *
>
> (vi)    The actor is in a position of authority over the victim and uses this position of authority to cause the victim to submit;
>
> * * *; or
>
> (viii)    The actor inflicts sexual intrusion in treatment or examination of a victim for purposes or in a manner substantially inconsistent with reasonable medical practices.

therapist in another state (Wyoming does not require certification), the card he gave to KO indicated he was a certified massage therapist.

[¶4]    KO advised Appellant she sought out his services because she suffered from fibromyalgia and arthritis.  As she started her massage regimen with Appellant, KO followed the same procedure she had followed all during her high school years when she was regularly administered massage therapy by Ms. Bishop:  she removed all of her clothing and positioned herself under a sheet—all outside the presence of the massage therapist.  When she was ready for the massage to begin, the massage therapist would enter the room and begin the massage.  Ms. Bishop or Appellant would administer massage to the various parts of KO's body, all the time working around the sheet draping her so as to allow her to maintain her privacy in respect of her intimate parts.  Until the incident in question, this is how Appellant conducted himself.  Ms. Bishop testified it was important for a massage therapist to establish a sense of trust with a client, stating that "the more that they trust me, the more relaxed they would be.  And the more relaxed they are, the more they benefit from it."  Between September 2009 and April 15, 2010, KO received more than a dozen massages from Appellant—all without incident until April 15, 2010.

[¶5]    On April 15, 2010, KO made arrangements for a massage by Appellant.  It took place at the private space made available to Appellant at the offices of Ms. Tobin.  Because she was menstruating, KO, as was her practice in such circumstances, shed all of her clothing except for her panties.  She was wearing a tampon.

[¶6]    The massage treatment began.  First prone, then supine, KO submitted herself to Appellant's massage ministrations and followed his instructions—as she always had with Ms. Bishop and with Appellant.  She completely trusted Appellant, as she had Ms. Bishop in Thermopolis.  KO had informed Appellant, prior to the massage, that her legs, hips and knees were particularly bothering her and would thus need special attention.

[¶7]    Once KO was supine, Appellant massaged KO's knees, then her hips.  Then, towards the end of the massage, unexpectedly and without her consent, Appellant, according to KO, slipped his hand inside her underwear and digitally penetrated her vagina.  As he was doing this, he was touching her breasts with his other hand.  Appellant had never previously massaged KO in any area close to her vagina.  As Appellant continued in-and-out motions with his fingers in her vagina, her tampon was pushed further up into her vagina in a painful way.   In shock, KO said nothing.

[¶8]    At the conclusion of the massage session, Appellant told KO, "I hope you enjoyed this.  It's one of my nontraditional massages."  KO said nothing to Appellant.  She paid him the agreed sum of $25.00 (the student rate quoted to KO by Appellant), dressed, left the building, drove several blocks in her vehicle, pulled over, and broke down crying.

[¶9] The next day, KO interrupted her college schedule and drove home to Thermopolis. Her parents were out of town. At Sunday services two days later, she informed her LDS bishop what had happened. That evening, her parents now returned home, she informed them of the incident. The local Chief of Police immediately responded to their home. He advised KO to report the incident to local law enforcement in Powell. She and her parents travelled to Powell the following day and reported the incident to Officer Brown of the Powell Police Department.

[¶10] Officer Brown made arrangements for a recorded phone call by KO to Appellant. During the call, Appellant repeatedly apologized to KO for putting his fingers in KO's vagina during the massage. He averred he thought they would both enjoy it. He stated other clients had enjoyed such an experience. He reiterated it was one of his non-traditional massages. He claimed he had massaged closer to her vagina during KO's previous massage session, so he thought it would be alright to go further. He stated there was no excuse for his digital penetration of KO.

[¶11] Two days after the recorded call, Appellant appeared at the Powell Police Department for an interview. Without knowledge his previous phone conversation with KO had been recorded, Appellant denied digitally penetrating KO or touching her breasts. He characterized a non-traditional massage as simply paying more attention to the hips and legs. He later provided a written statement in which he claimed he did no more than KO had requested.

[¶12] KO finished her spring semester at NWCC on-line and with some in-class time. Once the semester was over, she determined never to return to Powell again. In September 2010, she began a church mission in Virginia, to last eighteen months.

[¶13] Appellant went to trial before a jury on a consolidated Information charging him in two counts within the same statute and founded on the same act: a violation of Wyo. Stat. Ann. § 6-2-303(a)(vi) and a violation of Wyo. Stat. Ann. § 6-2-303(a)(viii).

[¶14] In voir dire, the prosecutor averred the burden of proof in the case was proof beyond a reasonable doubt, although not proof beyond all doubt. Defense counsel explored the topic as well, even assigning percentages to the preponderance and clear and convincing standards of proof. He elicited agreement from the venire that, if selected to serve as jurors, each would adhere to the standard of proof beyond a reasonable doubt. In other remarks, the prosecutor did the same.

[¶15] The court read Instructions Nos. 6 and 7 to the jury before opening remarks, repeating these instructions to the jury before closing remarks. These were the elements instructions for each of the two charges, and each instruction advised the jury as to the burden of proof it was to apply to each charge, namely: proof beyond a reasonable doubt. Instruction No. 9, read to the jury before closing remarks, explained the presumption of

innocence and included language repeating the State's burden of proof as being proof beyond a reasonable doubt.

[¶16] In opening remarks, the prosecutor painted the alleged victim, KO, as a person who from an early age suffered recurrent aches and pains that set her apart from other children. This condition was eventually diagnosed at age fifteen as fibromyalgia and arthritis. The prosecutor told the jury KO had strong religious beliefs. He averred she was a strong young woman who agreed, in spite of the assault against her, to engage in a recorded telephone conversation with Appellant. He claimed Appellant called KO a liar when he denied having digitally penetrated her in his statement to law enforcement given after the recorded telephone conversation. He asked the jury to consider the evidence about to be presented and hold Appellant accountable for what he had done. He reminded the jury the degree of proof required for conviction of either charge was proof beyond a reasonable doubt. In his opening remarks, defense counsel repeated the degree of proof required for conviction on either charge.

[¶17] In his examination of KO, the prosecutor elicited the following: her sympathetic parents were in court watching her testify; she felt different from other children when she was young on account of her physical ailments; she had certain physical limitations; she was prescribed medication to alleviate her chronic pain; she was the salutatorian of her high school graduating class; she followed her dream of attending college after high school; she was an impecunious college student happy to be able to pay only $25 for a massage therapy session (the sessions were not covered by insurance); she was a good student studying her chosen field of pre-nursing; she suffered terribly from an emotional standpoint after the assault; she became so disaffected with Powell as the scene of the assault that she had to finish up part of her semester's course work on-line; and, once the semester was complete, she declined to return to Northwest Community College at all, for the time giving up her college career altogether because of the assault, and wishing never to return to Powell, Wyoming again. Instead, she commenced an eighteen month mission with her church. She planned to return to college somewhere else, but was unsure about pursuing the same career path.

[¶18] The prosecutor examined KO about her faith, eliciting she is a faithful member of the Church of Jesus Christ of Latter Day Saints who practices the tenets of her faith, including the proscription against pre-marital sexual relations, to include no intercourse and no sexual touching. The prosecutor questioned KO as to whether or not she had ever had any kind of a sexual relationship with a male prior to the assault, and she indicated she had not. When asked by the prosecutor if it was her wish to save herself for marriage, KO answered in the affirmative.

[¶19] In closing argument to the jury, the prosecutor stated the following in respect of the state's burden of proof:

4

First off, you have to know whose the burden of proof is, and I think by now it's been drilled to your head that it's the State's burden of proof. Okay. Well, that doesn't mean a whole lot unless you know what the burden of proof is. It's one of beyond a reasonable doubt. And I told you this in *voir dire* in the opening. It is the highest burden that any party will face in any courtroom in the United States. And for obvious reasons. It should be. It should be.

But it's not an insurmountable burden. The State of Wyoming – you are not permitted to attempt to define what "beyond a reasonable doubt" is. It is what it states. But sometimes it helps to know what something isn't to understand what it is.

It is not proof beyond all doubt. It is not proof to a mathematical certainty. And certainly it is not the State's obligation to prove the complete impossibility of [the Defendant's] innocence. You may think to yourself, "Wait a minute. So we can potentially be convicting someone who is not guilty?" No. That's not what it says at all. It just says proof beyond a reasonable doubt.

So what does that mean? How do you make that decision? You do it just like [you do] in your everyday lives when you decide to go to the store, when you decide to believe this friend and not that friend when they are telling you different stories. You use your everyday common sense to determine: Does this make sense? Is what the State's saying reasonable? Is what the defense claims, is that reasonable? If it's not reasonable, you disregard it, just like you do in your everyday lives.

[¶20] The prosecutor later added:

It's a tough job that you do as jurors. There is no doubt about it. It's a tough job. I know it's human nature to forgive. But under your oath, that's not your right. Forgiveness is up to [KO], not you. Under your oath, your job is to find justice. Your job is to hold [the Defendant] accountable to what happened to [KO] on April 15th of 2010. If [KO] somewhere down the road decides to forgive [the Defendant], that's up to you – that's up to her not you.

5

[¶21]   In his closing argument, defense counsel on more than one occasion re-visited the proposition the jury was guided by the standard of proof beyond a reasonable doubt in considering each charge.  In rebuttal, the prosecutor stated:

> What's the one thing no one's ever asked from the defense: How do you think [KO] feels?  At least he's being attacked for something he did.  [KO] was put through that, and she didn't ask for any of it.  And not once has the defense asked you to consider her.  Not once.
>
> The defendant got exactly what was coming to him, and he is here because of his own conduct.  [KO] is not here because of anything she did.  She's here because of what [the Defendant] did.  And I ask you to hold him accountable for that conduct.

[¶22]   After deliberating, the jury convicted Appellant of both counts charged in the Consolidated Information.   The parties agreed one criminal act supported both convictions, and, as a result, the sentences ought to merge.  The District Court, being of like mind, imposed two concurrent terms of not less than three (3) nor more than five (5) years incarceration.  However, the District Court entered two convictions and imposed separate (non-merged) financial assessments in respect of each one.

[¶23]   This appeal followed.

## ISSUES PRESENTED

[¶24]   We discern the following issues.

Issue #1:

Whether or not there was sufficient evidence to support a jury finding of "position of authority" as required for conviction under Wyo. Stat. Ann. § 6-2-303(a)(vi).

Issue #2:

Whether or not the prosecutor, in his closing argument to the jury, engaged in prosecutorial misconduct when he attempted to define the term "reasonable doubt."

Issue #3:

Whether or not the prosecutor, in his opening remarks and closing argument, as well as in development of the evidence, urged the jury to convict Appellant on an improper basis by painting the victim as a sympathetic figure, including eliciting impermissible victim impact evidence, eliciting an emotional response to the victim by the jury, and urging the jury to hold the Defendant accountable.

Issue #4:

Whether the constitutional protection against double jeopardy requires this court to vacate one of the two convictions under disjunctive provisions of one statute when both convictions rest upon the same criminal act.

## DISCUSSION

***Issue #1: Whether or not there was sufficient evidence to support a jury finding of "position of authority" as required for conviction under Wyo. Stat. Ann. § 6-2-303(a)(vi).***

*Standard of Review*

[¶25] Appellant challenges whether or not he occupied a "position of authority" as that term is defined by statute, so as to support his conviction for violating Wyo. Stat. Ann. § 6-2-303(a)(vi).

[¶26] Wyo. Stat. Ann. § 6-2-303 provides in pertinent part:

> (a) Any actor who inflicts sexual intrusion on a victim commits sexual assault in the second degree if, under circumstances not constituting sexual assault in the first degree[.]
> * * *
> (vi) The actor is in a position of authority over the victim and uses this position of authority to cause the victim to submit[.]

[¶27] Wyo. Stat. Ann. § 6-2-301(a)(iv) provides:

> "Position of authority" means that position occupied by a parent, guardian, relative, household member, teacher, employer, custodian *or any other person who, by reason of his position, is able to exercise significant influence over a person; . . .*

7

(emphasis added).

[¶28] The State contends Appellant was in a position of authority over the victim because, as a massage therapist, he was a "person who, by reason of his position, [was] able to exercise significant influence over [the victim.]" *Id*. Appellant demurs.

[¶29] The parties agree we are to apply two standards of review, *de novo* as to the construction of the statute and, in evaluating the sufficiency of the evidence to support a conviction, the familiar standard:

> [W]e examine and accept as true the State's evidence and all reasonable inferences which can be drawn from it. We do not consider conflicting evidence presented by the defendant. We do not substitute our judgment for that of the jury; rather, we determine whether a jury could have reasonably concluded each of the elements of the crime was proven beyond a reasonable doubt. This standard applies whether the supporting evidence is direct or circumstantial.

*Craft v. State*, 2013 WY 41, ¶ 18, 298 P.3d 825, 830-31 (Wyo. 2013) (quoting *Dawes v. State*, 2010 WY 113, ¶ 17, 236 P.3d 303, 307 (Wyo. 2010) (citations omitted)).

> *Discussion*

[¶30] We have previously concluded Wyo. Stat. Ann. § 6-2-301(a)(iv) is not unconstitutionally void for vagueness under the Wyoming Constitution or the United States Constitution. *Scadden v. State,* 732 P.2d 1036, 1039-43 (Wyo. 1987). The issue presented in *Scadden* was whether or not a teacher/volleyball coach involved in sexual relationships with high school volleyball players was in a position of authority *vis à vis* his players. The inquiry was whether he was a "person who, by reason of his position, [was] able to exercise significant influence over a person; . . ," as required by the portion of the statutory definition under which he was charged, so as to support a conviction for second degree sexual assault. In *Scadden*, we concluded:

> [I]t is apparent that the legislature used the word "authority" to mean an externally granted power, not a self-generated control. One in a position of authority is a person who acquires that status by virtue of society and its system of laws granting to him the right of control over another.

*Id.* at 1042.

[¶31]  In *Faubion v. State,* 2010 WY 79, 233 P.3d 926 (Wyo. 2010) we again construed Wyo. Stat. Ann. § 6-2-301(a)(iv).  The case involved a chiropractor accused of sexual impropriety with a client, and the State argued appellant was in a position of authority under the catch-all portion of the definition.  We noted the practice of a chiropractor is governed by statute.  We took "judicial notice that chiropractors govern themselves by a variety of ethical codes and at least one of them advises practitioners of 'Practices of Questionable Propriety' which includes that such practitioners shall not take physical advantage of any patient."  *Id.* at ¶ 18, 233 P.3d at 931.  We cited approvingly to a noted legal encyclopedia.  "There is a fiduciary or trust relationship between a patient and her healers and transactions between them are closely scrutinized by the courts."  *Id.* (citing 61 Am. Jur. 2d *Physicians, Surgeons and Other Healers*, §§ 142-143 (2002)).  We discerned the purpose of the Legislature in enacting the provision in question was "to prohibit persons in such positions of authority from using those positions to cause any individual who might be subject to authoritative power to submit to sexual acts."  *Faubion,* ¶ 17, 233 P.3d at 930.  Significantly, in sustaining "position of authority" under the facts of the case, we averred "[i]t appears that Wyoming's statute is exceptionally inclusive both as written and as construed in *Scadden*."  *Id.* at ¶ 19, 233 P.3d at 931.

[¶32]  Most recently, in *Baldes v. State,* 2012 WY 67, 276 P.3d 386 (Wyo. 2012) we considered whether sufficient evidence in the record supported conviction of a certified nursing assistant for sexual assault in the third degree.  Again, the State relied upon the catch-all language of Wyo. Stat. Ann. § 6-2-303(a)(iv).  In determining there was sufficient evidence of "position of authority" to support the conviction, we stated:

> Although there are distinct differences between the job duties of a chiropractor and a certified nurse assistant, when we focus on the power and control aspects of those positions with respect to the clients or patients they serve, the same reasoning applies. *Power differentials exist in professional situations in which a service provider has knowledge, experience, and authority that the client seeks and needs from the provider.* In a situation involving a provider of medical services, a client may be rendered exceptionally vulnerable by the nature of the illness or disability for which he seeks services.

*Id.* at ¶ 11, 276 P.3d at 389 (emphasis added).

[¶33]  The foregoing line of cases illustrates that whether or not there is sufficient evidence an accused is in a "position of authority," as defined by Wyo. Stat. Ann. § 6-2-301(a)(iv), is a mixed question of law and fact.  With this in mind, we observe a massage therapist exercises control over a client when applying his or her remediative skills.  He or she can and should instruct the client to move a leg, an arm, turn over, etc. so as to

more effectively treat the client. The client relies on the instructions of the massage therapist, who practices a specialized craft, in order to obtain the greatest relief. The client may be in an unclothed or partially clothed, not to mention especially relaxed, condition which puts the client in a vulnerable position *vis à vis* the massage therapist. From this, we determine in the massage therapist-client relationship there exists the power differential we highlighted in *Baldes*. As a result, based on our precedent, a massage therapist may indeed hold a position of authority, and the next question we must address is whether the record contains sufficient evidence to support the jury's determination that Appellant did hold such a position.

[¶34] According to the victim, she needed the services of a massage therapist, and, to this end, sought out the services of the Appellant. According to the victim's testimony, the Appellant held himself out as one with knowledge, experience and skill in the field of massage therapy. After first disrobing, as she had done in the past for her previous massage therapist, the victim followed the Appellant's every instruction, including shifting the position of her body during the massage therapy session so as to enable him to apply his ministrations. Importantly, the victim testified she completely trusted the Appellant; her previous massage therapist, Ms. Bishop, testified a relationship of trust between a massage therapist and a client is essential to a successful therapy regimen. This scenario clearly satisfies the "power differential" explicated in *Baldes*.

[¶35] The victim testified she was ordinarily completely naked for her massages with Appellant, and only because she was experiencing her menstrual period was she clad in panties (protecting her tampon from disturbance) during the massage therapy session in which the alleged assault occurred. A jury might easily conclude that in such a naked or near-naked state a person receiving a massage, like the victim, is especially vulnerable, particularly when the massage therapist is of the opposite sex and more than twice the client's age, as the testimony established was the case here. The client is alone and in an isolated space, also true here. A jury might further reasonably conclude the relaxed state into which a client like the victim falls as he or she is being massaged tends to weaken the attentiveness of the client and call, consequently, for greater trust in the massage therapist and for the exercise of increased responsibility on the part of the massage therapist. A jury might reasonably conclude a client in such circumstances, just like the victim, is easily violated by an unscrupulous massage therapist.

[¶36] Appellant suggests the testimony he was not subject to certification as a massage therapist in Wyoming augurs against the sufficiency of the evidence to support the proposition he was in a position of authority in relation to the victim. We cannot agree. To so conclude would elevate form over substance. While the craft of massage therapy is certified elsewhere, the question of certification of the craft in Wyoming neither adds to nor subtracts from the power differential present in the massage therapist-client relationship. Nor are we persuaded by Appellant's argument that a jury could not find he occupied a position of authority on account of the fact that he was employed by the

10

victim, instead of the opposite. The employment arrangement does not alter the significant influence a massage therapist exercises over a client during a massage therapy session.

[¶37] In sum, we hold there is sufficient evidence in the record to enable a jury to conclude beyond a reasonable doubt the "power differential" we identified in *Baldes* is present and identified in stark relief in the massage therapist-client relationship that existed between the Appellant and the victim. That is, there is sufficient evidence in the record to support a jury determination by proof beyond a reasonable doubt that Appellant was in a position of authority over the victim.

***Issue #2: Whether or not the prosecutor, in his closing argument to the jury, engaged in prosecutorial misconduct when he attempted to define the term "reasonable doubt."***

***Issue #3: Whether or not the prosecutor, in his opening remarks and closing argument, as well as in development of the evidence, urged the jury to convict Appellant on an improper basis by painting the victim as a sympathetic figure, including eliciting impermissible victim impact evidence, eliciting an emotional response to the victim by the jury, and urging the jury to hold the Defendant accountable.***

[¶38] We conjoin our treatment of the various claims of prosecutorial misconduct.

*Standard of Review*

[¶39] When objection is interposed at trial, "[c]laims of prosecutorial misconduct are settled by reference to the **entire** record and hinge on whether a defendant's case has been so prejudiced as to constitute denial of a fair trial." *Strange v. State,* 2008 WY 132, ¶ 4, 195 P.3d 1041, 1043 (quoting *Arevalo v. State,* 939 P.2d 228, 230 (Wyo. 1997) (citations omitted; emphasis in original)). When, as here, there is no objection at trial, review is for plain error.

> Our plain error analysis requires that an appellant establish, by reference to the record, a violation of a clear and unequivocal rule of law in a clear and obvious, not merely arguable, way and that the violation adversely affected a substantial right resulting in material prejudice. Material prejudice is shown when a reasonable possibility exists that, but for the error, the jury would have returned a more favorable verdict.

*Dennis v. State,* 2013 WY 67, ¶ 42, 302 P.3d 890, 899 (Wyo. 2013) (internal citations and quotation marks omitted). "Reversal of a conviction on the basis of prosecutorial misconduct, which was not challenged in the trial court, is appropriate only when there is

a substantial risk of a miscarriage of justice." *Burton v. State,* 2002 WY 71, ¶ 13, 46 P.3d 309 (Wyo. 2002) (internal quotation marks and citations omitted).

[¶40]   Insofar as challenges to a prosecutor's remarks in closing argument or rebuttal, we have previously averred we are disinclined to find plain error therein because we are reluctant to place the trial court in a position of having to *sua sponte* challenge remarks of counsel when there is otherwise no objection thereto. *Sanderson v. State,* 2007 WY 127, ¶ 37, 165 P.3d 83, 93 (Wyo. 2007).

[¶41]   The burden rests upon Appellant to establish prosecutorial misconduct. *Seymore v. State,* 2007 WY 32, ¶ 17, 152 P.3d 401, 407 (Wyo. 2007) (abrogated on other grounds by *Granzer v. State,* 2008 WY 118, 193 P.3d 266 (Wyo. 2008)).

### *Discussion*

[¶42]   Prosecutorial misconduct implicates the right to a fair trial and, as a consequence, due process of law. *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974) ("When specific guarantees of the Bill of Rights are involved, this Court has taken special care to assure that prosecutorial conduct in no way impermissibly infringes them."). For this reason, we carefully scrutinize claims a prosecutor has overreached in obtaining a conviction. We add the practical and obvious proposition that prosecutorial misconduct runs the risk of undermining what might otherwise be a sustainable conviction.

[¶43]   In evaluating claims of prosecutorial misconduct, we weigh in the balance the pivotal and unique role of the prosecutor in trial court proceedings.   "Jurors recognize the prosecutor's role as a leader of law enforcement in their community; they naturally regard the prosecutor as a symbol of authority; that recognition and regard may impress a jury, causing jurors to give significant weight to the words of a prosecutor." *Talley v. State,* 2007 WY 37, ¶ 21, 153 P.3d 256, 263 (Wyo. 2007). With a prosecutor, every remark rings with singular clarity. Consequently, improper remarks by a prosecutor, particularly a succession of them, can create a disproportionately strong negative penumbra around a defendant. This runs the risk a defendant will be convicted not on the basis of facts found by a jury but, instead, on the basis of speculation, passion and prejudice.

[¶44]   With the foregoing in mind, we turn to Appellant's claims.

### *Remarks Concerning Reasonable Doubt*

[¶45]   Appellant argues the prosecutor impermissibly attempted in closing statement to define reasonable doubt for the jury. The challenged remarks are well apparent from the record, and they are clear and obvious.

[¶46] We next consider whether these remarks constitute a violation of a clear and unequivocal rule of law. To be sure, it is error for a prosecutor to attempt to define "reasonable doubt" for the jury. *Blakey v. State,* 542 P.2d 857, 861 (Wyo. 1975). On the other hand, although "[t]his Court has held that a definition of reasonable doubt is not required and that an attempt at defining the term might confuse the jury[,] [w]e have allowed . . . an explanation that the prosecution's burden of proof is not to establish guilt to an absolute certainty." *Rivera v. State,* 987 P.2d 678, 680 (Wyo. 1999) (internal citations omitted).

[¶47] In *Rivera,* the prosecutor in voir dire had stated to the venire:

> [B]eyond a reasonable doubt is not the same thing as beyond all doubt. It's not the same thing as beyond a shadow of a doubt.
>
> Would you all agree that proving something beyond all doubt or beyond a shadow of a doubt would be an impossible task? Does everyone realize that?
>
> Nothing could be proven beyond any doubt whatsoever, and so the State's burden of proof is not beyond any doubt or beyond all doubt or beyond a shadow of a doubt; it's beyond a reasonable doubt.

*Id.* We concluded the statements of the prosecutor did not amount to a violation of a clear and unequivocal rule of law. "We disagree that the prosecutor instructed the jury on the definition of the term 'reasonable doubt.' Our review of the challenged statements reveals that the prosecutor merely explained that the prosecution's burden of proof was not beyond all doubt or beyond a shadow of a doubt." *Id.* at 681.

[¶48] The remarks in question in the instant case are not in any measure dissimilar to those at issue in *Rivera.* Consequently, our holding is the same. There is no plain error because Appellant has failed to persuade us the statements amounted to a violation of a clear and unequivocal rule of law.

[¶49] Even if this were not so, Appellant fails to demonstrate the claimed violation adversely affected a substantial right resulting in material prejudice. Beginning with voir dire, through opening and closing remarks, both the prosecutor and defense counsel impressed upon the jury its duty to apply to the evidence the standard of proof beyond a reasonable doubt. The court instructed no less than five times as to the appropriate standard of proof. Jurors are presumed to follow the court's instructions. *Weeks v. Angelone,* 528 U.S. 225, 234, 120 S. Ct. 727, 145 L. Ed. 2d 727 (2000). Contrary to

13

Appellant's proposition in his brief that "[t]his case hinged completely on whether the jury believed K.O.'s testimony," there was significant additional evidence of guilt, to wit, Appellant's own statement in the recorded telephone call from the victim from which a reasonable jury could easily conclude he admitted the act of intrusion giving rise to the charges. In light of all the evidence and the surfeit of instruction on the proper burden of proof, we cannot conclude a reasonable possibility exists that, but for the claimed error, the jury would have returned a more favorable verdict. Nor, for the same reasons, is there a substantial risk of a miscarriage of justice resulting from the challenged remarks.

### Conviction on an Improper Basis

[¶50]  We start by averring it is plainly inappropriate for a prosecutor to lead a jury to convict a defendant on a basis other than the facts. *See Hopkinson v. State,* 632 P.2d 79, 145 (Wyo. 1981) ("Arguments designed to appeal to the juror's prejudice or passion are improper . . . ."). After all, a jury is a fact-finding body. It is not a body assembled to cast moral judgment on a defendant. Remarks and evidence that tend to inflame the passions or prejudices of a jury cross the line separating fact from emotion, and such material causes us to carefully scrutinize the record for prosecutorial error.

[¶51]  On the other hand, it is often difficult to parse out the effect on a jury of a potpourri of remarks and evidence sprinkled across a trial record. A certain amount of background information about an alleged victim in a criminal case, for example, is entirely appropriate. On the other hand, if the remarks and evidence build up a hue of sympathy, emotion and prejudice in favor of a victim to a point where the jury convicts on a basis other than facts found, the line has been crossed, and there is prosecutorial misconduct. Prosecutors continue to edge up to this line despite our decisions cautioning against conduct of this kind. *See Seymore,* ¶ 21, 152 P.3d at 410-11.

[¶52]  Turning to the record, a careful review clearly indicates the prosecutor undertook throughout the trial to paint KO as a sympathetic figure. He alluded to her difficult teenage years suffering from fibromyalgia and arthritis. He pointed out how this made her feel different from other children. In spite of the assault on her, he reminded the jury she was strong enough to engage in a recorded telephone conversation with the defendant. She had strong religious beliefs that included a prohibition on pre-marital sexual activity or sexual touching.[2] She was salutatorian of her high school graduating class. The prosecutor elicited the victim's sympathetic parents were in court to support her. We find no transgression of law in any of this evidence or remarks related thereto.

---

[2] This evidence, in addition to providing background information about the victim, was relevant to rebut what was at the very least an insinuation by Appellant that the victim had consented to the digital penetration of her vagina.

14

[¶53] However, the prosecutor went further. He diligently elicited the alleged victim was a good student studying her chosen field of pre-nursing, but as a result of the assault she suffered emotional trauma, and she had to leave college, vowing never to return to Powell again. She had to take time off before even considering whether or not to resume her college career. She was so unsettled by the assault that she questioned her chosen profession in nursing. The clear import of the evidence the prosecutor elicited from the victim was that the victim suffered tremendously as a consequence of the unwanted assault by the Appellant.

[¶54] Appellant complains, and we agree, the foregoing amounts to forbidden victim impact testimony. *See Smith v. State,* 2005 WY 113, ¶ 15, 119 P.3d 411, 416 (Wyo. 2005) ("[V]ictim impact evidence is that evidence relating to the victim's personal characteristics and to the physical, emotional, or social impact of a crime on its victim and the victim's family."). This, however, does not end our inquiry. We must discern whether or not the evidence was adduced and argued for an improper purpose. For while we have previously held that victim impact testimony is admissible if it is relevant, *id.* at ¶ 18, 119 P.3d at 417 (finding no error where challenged evidence was adduced to support credibility), we have cautioned that its admission for an irrelevant purpose is error.

> It is clear that the testimony offered by the victims of this crime with respect to how it affected them in connection with their lives after the crime is absolutely irrelevant with respect to the issues before the jury. Their discussion of the impact of the crime upon them could not in any way serve to establish any of the elements of the crime of aggravated robbery. The only purpose must have been to attempt to arouse the passions of the jury. Consequently, we are satisfied that the admission of such evidence is error, and the trial courts are cautioned not to permit such evidence to be presented unless there is a clear justification of relevance.

*Justice v. State,* 775 P.2d 1002, 1010-1011 (Wyo. 1989).

[¶55] We cannot identify any relevant purpose for the victim impact testimony we have identified. It is too attenuated a proposition that it was presented to rehabilitate an attack on KO's credibility. As in *Justice,* we conclude the victim impact testimony was adduced with the object of arousing the passions of the jury against the defendant for the harm he caused the victim. Consequently, Appellant has established violation of a clear and unequivocal rule of law.

[¶56] The question now arises whether the violation adversely affected a substantial right resulting in material prejudice. For the same reasons outlined above in our

15

discussion of whether the prosecutor attempted to define reasonable doubt for the jury, we decline to conclude that without the forbidden victim impact testimony the jury would have returned a more favorable verdict. Once again, we point to the abundance of evidence pointing to Appellant's guilt, to include his own admission to the act of digital penetration. As a consequence, there is no substantial risk of a miscarriage of justice resulting from the challenged remarks.

[¶57] Finally, we turn to Appellant's claim the prosecutor committed misconduct when he urged the jury to "hold the defendant accountable" for his acts. The prosecutor exhorted the jury to do just this in his opening and rebuttal remarks. In closing, he stated, "Your job is to hold Mr. Solis accountable to what happened to KO on April 15th of 2010." Otherwise, the prosecutor did not dwell on this proposition.

[¶58] We have considered it an ingredient of cumulative error for a prosecutor to argue in closing remarks that in being selected to sit on a case the jury had agreed to hold someone accountable. So too for remarks in the same closing statement that the jury had a duty to find the defendant guilty of the crime charged. *Seymore,* ¶¶ 18, 20-21, 152 P.3d at 407-08, 410. However, we have also concluded that "asking the jury to hold the appellant responsible for the crime because the 'evidence shows you he is guilty,' is not the same as telling the jury that it has a duty to convict the defendant." *Yellowbear v. State,* 2008 WY 4, ¶ 74, 174 P.3d 1270, 1298 (Wyo. 2008).

[¶59] In applying the law to the facts of this case, we conclude the remarks of the prosecutor fall more into the category of asking the jury to hold the defendant accountable for a crime the evidence shows he committed rather than insisting it was the jury's duty to find the defendant guilty. Even describing the jury's task as a "job" falls short of arguing it had a duty to convict. It is merely another way of saying the jury swore an oath to listen to the evidence and arrive at a verdict according to the instructions from the court. By comparison, when a prosecutor argues the jury has a "duty" to convict this amounts to a suggestion the jury has no alternative but to convict.

[¶60] We therefore cannot identify violation of a clear and unequivocal rule of law in the challenged statements of the prosecutor. This ends the inquiry and, again, we find no plain error.

***Issue #4: Whether the constitutional protection against double jeopardy requires this court to vacate one of the two convictions under disjunctive provisions of one statute when both convictions rest upon the same criminal act.***

*Standard of Review*

[¶61] While a claim of double jeopardy is a jurisdictional defense, Appellant did not raise his claim in the district court.[3] As a consequence, we review for plain error. *Bowlsby v. State,* 2013 WY 72, ¶¶ 5-6, 302 P.3d 913, 915-16 (Wyo. 2013). Again,

> [t]o establish plain error, the appellant must prove (1) the record clearly reflects the alleged error; (2) the existence of a clear and unequivocal rule of law; (3) a clear and obvious transgression of that rule of law; and (4) the error adversely affected a substantial right resulting in material prejudice to him.

*Id.*, ¶ 6 (quoting *Snow v. State*, 2009 WY 117, ¶ 13) (internal citation omitted).

*Discussion*

[¶62] Here, of course, the record clearly reflects two convictions under disjunctive subsections of the same statute entered against Appellant as a consequence of the jury's verdict. As well, it is uncontroverted that to subject a defendant to double jeopardy, if the same be present, results in material prejudice to him. *Bowlsby,* ¶ 7 ("There is also no dispute that an improper conviction and sentence satisfies the prejudice prong of the plain error test." (citing *Ball v. U.S.,* 470 U.S. 856, 864-865 (1985)). The only remaining inquiry, then, is whether or not subjecting Appellant to two convictions under the same statute, as done in this case, amounts to a clear and obvious transgression of a clear and unequivocal rule of law. We find it does.

[¶63] As we have recently stated, the double jeopardy clauses of both the United States Constitution (Amend. V) and the Wyoming Constitution (Art. 1, Sec. 11), which we have held are equivalent in reach, *Bowlsby,* ¶ 8, provide protection against three distinct ills: a

---

[3] We recognize Appellant at trial objected to the consolidated Information on the ground the two counts contained therein were not charged in the alternative but were, instead, two free-standing criminal counts. The district court overruled the objection.

It has been long recognized the prosecution may charge as it sees fit, even in instances where the charges are based on a single act. *Ball v. United States,* 470 U.S. 856, 865, 105 S. Ct. 1668, 84 L. Ed. 2d 740 (1985). *See also, Rivera v. State,* 840 P.2d 933, 943 (Wyo. 1992) (abrogated on other grounds by *Springfield v. State*, 860 P.2d 435 (Wyo. 1993)) (double jeopardy not implicated when two separate criminal charges are founded on same act). The key inquiry is whether, upon conviction of multiple counts based upon a single act, a defendant's multiple convictions can stand in the face of a double jeopardy challenge. *Ball,* 470 U.S. at 865. In the instant case, as a result, the prosecution was free to charge two disjunctive subsections of Wyo. Stat. Ann. § 6-2-303. The district court was correct to overrule Appellant's objection at trial.

Appellant's objection for the first time on appeal to two convictions being entered under the circumstances presented is a different objection than the one interposed at trial to failure to charge in the alternative. As such, plain error review applies.

second prosecution for the same offense after one has been acquitted, a second prosecution for the same offense after one has been convicted, and multiple punishments for the same offense. *Sweets v. State,* 2013 WY 98, ¶ 20, 307 P.3d 860, 867 (Wyo. 2013). In the instant review we deal with whether or not the third proscription has been violated.

[¶64] Notably, the constitutional proscription against multiple punishments for the same offense includes a proscription against multiple convictions for the same underlying act. *Ball,* 470 U.S. at 861 ("'[P]unishment' must be the equivalent of a criminal conviction and not simply the imposition of sentence."). Thus, simply merging sentences does not cure the ill of multiple punishments for the same offense. As the United States Supreme Court put it in *Ball*:

> The second conviction, whose concomitant sentence is served concurrently, does not evaporate simply because of the concurrence of the sentence. The separate conviction, apart from the concurrent sentence, has potential adverse collateral consequences that may not be ignored. For example, the presence of two convictions on the record may delay the defendant's eligibility for parole or result in an increased sentence under a recidivist statute for a future offense. Moreover, the second conviction may be used to impeach the defendant's credibility and certainly carries the societal stigma accompanying any criminal conviction. Thus, the second conviction, even if it results in no greater sentence, is an impermissible punishment.

*Id.* at 864-865 (internal citations omitted). *See also Bowlsby,* ¶ 7, n.2, 302 P.3d at 916; *Duffy v. State,* 789 P.2d 821, 825, n.3 (Wyo. 1990).

[¶65] Supervening the foregoing principles is the oft-stated proposition that legislative intent is the animating spirit which guides the inquiry into whether or not separate statutes or separate subsections of the same statute may be considered separate offenses which may carry separate convictions and separate sentences without violating double jeopardy. *Ball,* 470 U.S. at 861. *See also Sweets,* ¶ 22, 307 P.3d at 867-68; *Duffy,* 789 P.2d at 825 ("The rule that we have espoused for resolving the question of whether a defendant has been twice placed in jeopardy by virtue of multiple convictions and sentences is to look to the intention of the legislature with respect to whether the conduct should be punished as a single offense or as more than one.").

[¶66] The long-utilized tool for discerning legislative intent in double jeopardy analysis is the old dray horse *Blockburger v. United States,* 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), wherein we find familiar black letter law:

> The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. * * * A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.

*Id.* at 304 (internal citations and quotations marks omitted).

[¶67] We recently determined the *Blockburger* "same elements" test is the sole test we will use in determining the propriety of merging two sentences in order to avoid double jeopardy. *Sweets,* ¶ 49, 307 P.3d at 875. Significantly, in a footnote we acknowledged there is little difference in a merger of sentences and a merger of convictions. In the unusual instance where two statutes meet the "same elements" test, the appropriate remedy would be to vacate one of the convictions. *Id.* at n. 4.

[¶68] In *Sweets,* we abandoned the "same facts or evidence" test which we previously employed, along with the "same elements" test, to evaluate claims of double jeopardy based on multiple punishments. *Id.* at ¶ 49, 307 P.3d at 875. Under the "same facts or evidence" test,

> [i]n deciding merger questions, we focus not only on the similarity of the elements of the crimes, but also, and primarily, on the facts proved at trial, for the question is whether those facts show that in practical effect the defendant committed but a single criminal act.

*Bilderback v. State,* 13 P.3d 249, 255 (Wyo. 2000) (quoting *Commonwealth v. Whetstine,* 344 Pa. Super. 246, 496 A.2d 777, 779-80 (1985)). Employing this test could result in a merger question failing the *Blockburger* "same elements" test and yet passing muster under the "same facts or evidence" test resulting in a merger of convictions for sentencing purposes. *Bilderback,* 13 P.3d at 254-55. We only mention this because Appellant in his brief seeks safe harbor in the "same facts or evidence" test as a means of convincing us his two convictions merge and the result should be one conviction only. In this undertaking, with our recent abandonment of the "same facts or evidence" test, he must fail.

[¶69] Our inquiry, though, does not end. We must remember the *Blockburger* "same elements" test, if not met, only leads to a presumption the legislature intended separate

19

convictions and sentences. *Rouse v. State,* 966 P.2d 967, 970 (Wyo. 1998) (overruled on other grounds by *Sweets*, *supra*, as indicated above). We have said, "[t]his rule is simply a rule of statutory construction and should not be afforded preeminence over other rules. Furthermore, it should not be invoked when it leads to a conclusion that is inconsistent with legislative intent." *Duffy,* 789 P.2d at 831. We also recall that in resorting to *Blockburger* as the sole test for settling merger questions, *Sweets* was considering convictions and punishments under two distinct statutes (obtaining property by false pretenses and wrongful taking or disposing of property). The question presented here is different. Here we consider the propriety of the survival of two convictions under disjunctive subsections of the same statute (sexual assault in the second degree).

[¶70] We have previously considered the utility of *Blockburger* as an analytic tool when multiple convictions under a single statute have been evaluated for possible double jeopardy violation. In *Tucker v. State,* 2010 WY 162, 245 P.3d 301 (Wyo. 2010), we considered the propriety of two convictions resulting from two separate charges brought under the same statute but involving two different victims of an alleged aggravated vehicular homicide based on one course of conduct. In upholding two convictions, we averred:

> In instances where the protection against multiple punishments is implicated and multiple convictions are based on violations of different statutes, a double jeopardy claim is analyzed under the "same elements" test described in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), which Wyoming adopted in *State v. Keffer*, 860 P.2d 1118, 1131 (Wyo.1993). That test asks "whether each provision requires proof of an additional fact which the other does not." *Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182. However, in cases that involve two violations of the same statute, the "same elements" test does not apply. Instead, when two violations arise from the same statute, we look directly to the intent of the legislature to determine the appropriate "unit of prosecution." *See Amrein v. State*, 836 P.2d 862, 865 (Wyo.1992). In these situations, we have held that "statutory construction and legislative intent will control the determination whether, when there are multiple victims from a single act or course of conduct, there is only one crime or as many crimes as there are victims." *Id.* at 864; *Tuggle v. State*, 733 P.2d 610, 612 (Wyo.1987); *Vigil*, 563 P.2d at 1352–53; *see also United States v. Ansaldi*, 372 F.3d 118, 125 n. 3 (2d Cir.2004) ("Ordinarily, courts apply the so-called 'Blockburger test' to determine whether or not two charged offenses constitute different crimes. That analysis is

20

inappropriate in this case, because there is only one statute at issue, and so, nothing to compare. Rather than determining whether one act falls within two distinct statutes, as in *Blockburger*, we are asking whether two acts constitute one statutory offense.") (citation omitted), *cert. denied*, 543 U.S. 949, 125 S.Ct. 364, 160 L.Ed.2d 266, *and cert. denied*, 543 U.S. 960, 125 S.Ct. 430, 160 L.Ed.2d 324 (2004); *United States v. Weathers*, 186 F.3d 948, 952 (D.C.Cir.1999) ("Where two violations of the same statute rather than two violations of different statutes are charged, courts determine whether a single offense is involved not by applying the *Blockburger* test, but rather by asking what act the legislature intended as the 'unit of prosecution' under the statute."), *cert. denied*, 529 U.S. 1005, 120 S.Ct. 1272, 146 L.Ed.2d 221 (2000).

[¶71] To be sure, *Tucker* involved the propriety of two convictions under the same statute where there are multiple victims and one course of conduct. In the case under review, on the other hand, we examine the propriety of two convictions under disjunctive provisions of the same statute where there is, again, one course of conduct but only one victim. Despite the slightly different questions presented, we discern in both scenarios a similar analytic tool: when the question presented is the propriety of multiple convictions under one statute where the same course of conduct is involved, there is a presumption the legislature intended one conviction only. This presumption, however, may be overcome by a showing the legislature intended otherwise. In *Tucker*, we in effect so found.

[¶72] To recognize a presumption in favor of one conviction where separate charges are brought and found under one statute provides a nice symmetry to the opposite presumption we recognize and mentioned earlier: in the case of convictions under separate statutes, the *Blockburger* "same elements" test, if not met, leads to a presumption the legislature intended separate convictions and sentences. This presumption, too, may be overcome by a showing the legislature intended otherwise.

[¶73] At the time Appellant was charged, there were seven (7) alternate ways in which a person could violate Wyo. Stat. Ann. § 6-2-303 (sexual assault in the second degree). The State elected to charge Appellant with violating two (2) of the subsections. Appellant does not argue he passes the *Blockburger* test. That is, Appellant concedes, and it is obvious from scrutiny of the implicated subsections of the statute, the subsections do not contain the same elements.

[¶74] In *Duffy* Appellant argued his convictions for aiding and abetting aggravated robbery and conspiracy to commit burglary should merge for sentencing. In rebuffing

this claim, the court first conceded "[i]f the defendant is found guilty on charges represented by two counts that constitute a single offense, the court then must vacate one of the convictions so that the double jeopardy clause is not violated." *Id.* at 825, n.3. But while "[d]efining . . . offenses in different statutes with separate penalties structures a presumption that the legislature intended separate punishments under each statute[,]" *id.* at 831, if "it is clear that the legislature intended alternative means of committing a single offense, only one conviction can be attained even though different evidence would be required to demonstrate the alternative means of committing the offense." *Id.* at 825, n.4. Put otherwise,

> [i]n those instances in which the language and purpose of the statute indicate a legislative intent to structure a single offense with alternative methods specified by which the statute may be violated, any violation of the statute is a single offense. According to the general rule, this is the result even if the evidence demonstrates that the statute has been violated in both of the alternative ways and, in such an instance, only one conviction can be sustained.

*Id.* at 827.

[¶75]  Relying on *Duffy,* this court very recently decided *Stalcup v. State,* 2013 WY 114, 311 P.3d 104 (Wyo. 2013), in which appellant claimed two convictions for violating disjunctive provisions of Wyo. Stat. Ann. § 31-5-233 could not stand.  The amended Information charged two counts in the alternative, but the verdict form failed to designate the charges as alternatives and simply inquired whether the defendant was guilty of each count in turn.  The jury so found.  The district court sentenced in like fashion, although it ordered the two DUI convictions to merge for purposes of sentencing.  We determined the district court erred in entering a conviction for each DUI charge.  We held, "[w]hen a statute describes alternative means of committing the same offense, it will support only one conviction and one sentence even if the evidence shows that the statute was violated in both ways." *Id.* at ¶ 39.  We reversed and remanded with instructions to the district court to enter only one conviction for DUI and sentence thereupon.

[¶76]  In *Stalcup*, relying as we did on *Duffy,* the Court in effect applied the presumption we have discerned running in favor of a conclusion the legislature intended only one conviction when a statute may be violated in varying ways stated in the disjunctive.  That is, disjunctive phrasing is consistent with a legislative intent to create one crime.  Naturally, application of the presumption leaves room for analysis of legislative intent on a case-by-case basis.

[¶77]  *Stalcup* determines our decision in this case.  As a result, under plain error analysis, we hold the district court committed a clear and obvious transgression of a clear

22

and unequivocal rule of law when it allowed two convictions to stand when they resulted from disjunctive charges brought under the same statute.

[¶78] Before concluding, though, we offer a procedural pointer. While we have held the two convictions cannot stand, it is permissible, as we have stated earlier, for the State to bring alternate charges under the same statute. This being so, it is naturally permissible for the verdict form in such a case to provide an option by way of special interrogatory for the jury to determine whether a defendant violated either or both of the charged provisions. In doing so, the jury ought to be asked to deliberate upon the ultimate question of guilt or innocence of the single charged offense (in this case, sexual assault in the second degree).[4]

## CONCLUSION

[¶79] We affirm on all issues presented other than the last. As to it, the sufferance of two convictions for violations of disjunctive sections of Wyo. Stat. Ann. § 6-2-303, we reverse both convictions and remand for entry of a new judgment and sentence convicting the Defendant of one violation of Wyo. Stat. Ann. § 6-2-303 and imposing one sentence.

---

[4] The 2009 Wyoming Criminal Pattern Jury Instructions treat this issue in Pattern Instructions Nos. 1.06C and 4.06.