# IN THE SUPREME COURT, STATE OF WYOMING

## 2016 WY 40

### OCTOBER TERM, A.D. 2015

### March 31, 2016

ERNEST RAY WATTS,

Appellant
(Defendant),

v.

S-15-0188

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Park County*
*The Honorable Steven R. Cranfill, Judge*

*Representing Appellant:*
> Office of the State Public Defender: Diane M. Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; Kirk A. Morgan, Senior Assistant Appellate Counsel. Argument by Mr. Morgan.

*Representing Appellee:*
> Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Christyne M. Martens, Senior Assistant Attorney General; Darrell D. Jackson, Faculty Director, Bradford H. Coates, Student Director, Travis K. Wagman, Student Intern, of the Prosecution Assistance Program. Argument by Mr. Wagman.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]    A jury convicted Ernest Ray Watts of aggravated assault and battery in violation of Wyo. Stat. Ann. § 6-2-502(a)(i) (LexisNexis 2015), as a result of an altercation with his girlfriend.   Mr. Watts appeals, arguing that the prosecutor's incorrect statement regarding the presumption of innocence and his attempt to define "reasonable doubt" in his closing argument constituted prosecutorial misconduct, the cumulative effect of which denied him his right to a fair trial.   We affirm.

## ISSUE

[¶2]    We adopt the issue statement advanced by Mr. Watts:

> Was Mr. Watts denied his right to a fair trial due to the cumulative effect of two acts of prosecutorial misconduct?

## FACTS

[¶3]    At the time of the incident, Mr. Watts was living with his girlfriend, Diana Lynch, in a rental house outside of Cody, Wyoming.   On January 9, 2014, Ms. Lynch was at home when Mr. Watts returned from work.   The two argued when Ms. Lynch told Mr. Watts that she did not want him watching television in the same room in which she had been reading.   Ms. Lynch testified that after a brief "hand skirmish" over the remote control, she walked to the telephone to call the television service provider and request that the service be disconnected.   She explained that Mr. Watts followed her, and told her that if she had the service shut off, he was going to "knock me on my . . . ass."   Ms. Lynch responded, stating: "If you do that, you'd better make it a good one."   At that point, according to Ms. Lynch, Mr. Watts punched her in the face.   She then remembered being on the floor with Mr. Watts standing over her and taunting her while she asked him to stop.   After the altercation, Ms. Lynch went to the bathroom to tend to her wounds. She asked Mr. Watts, "What happened?" to which Mr. Watts responded that she "had fallen into the plant."   Ms. Lynch responded, stating: "Ernie [Mr. Watts], that isn't what happened.   You did this to me."   Ms. Lynch testified that she asked Mr. Watts to drive her to the hospital, but he refused, telling Ms. Lynch that she was fine.   Ms. Lynch then drove herself to the hospital where she was treated.   Ms. Lynch suffered a blow-out fracture to the right orbit which required surgery; nasal bone fractures; a minor subarachnoid bleed; a concussion; and lacerations to her upper and lower lip and eyebrow, which required sutures.

[¶4]    Mr. Watts took the stand and testified that after the argument over the television, he retreated to the basement of the house to do his laundry.   Mr. Watts testified that he heard a crash in the upstairs area.   When he came upstairs, he saw Ms. Lynch lying "slumped" in the corner of the kitchen with a "plant [] encompassing her face."   Mr.

1

Watts helped Ms. Lynch up and helped tend to her injuries. He then stated that he did not believe Ms. Lynch needed further care, so he went to bed, and when he woke the next morning, Ms. Lynch was gone.

[¶5] After a three-day trial, the jury convicted Mr. Watts of intentionally causing serious bodily injury to another in violation of Wyo. Stat. Ann. § 6-2-502(a)(i). Mr. Watts timely filed his notice of appeal. Additional facts, testimony, and argument will be set forth below, as necessary.

## STANDARD OF REVIEW

[¶6] Mr. Watts failed to object to the prosecutor's allegedly improper statements at trial. Our review is therefore limited to a search for plain error. *Brown v. State*, 2014 WY 104, ¶ 19, 332 P.3d 1168, 1174-75 (Wyo. 2014) (citing *Leiker v. State*, 994 P.2d 917, 918 (Wyo. 1999)). "Plain error exists when: 1) the record is clear about the incident alleged as error; 2) there was a transgression of a clear and unequivocal rule of law; and 3) the party claiming the error was denied a substantial right resulting in material prejudice." *Collins v. State*, 2015 WY 92, ¶ 10, 354 P.3d 55, 57 (Wyo. 2015) (citing *Fennell v. State*, 2015 WY 67, ¶ 23, 350 P.3d 710, 719 (Wyo. 2015)).

[¶7] Normally, we would determine whether each incident of alleged misconduct by the prosecutor caused sufficient prejudice to require a reversal. However, in this case, Mr. Watts does not argue that each isolated statement made by the prosecutor constituted plain error. Instead, Mr. Watts contends that it is only when the errors are considered in the aggregate that they create sufficient prejudice to warrant reversal of his conviction. As a result, we need not analyze the prejudice prong for each separate instance of alleged prosecutorial misconduct. Instead, we examine: 1) whether the record is clear about each incident alleged to be misconduct; 2) whether each instance of alleged misconduct actually transgressed a clear and unequivocal rule of law; and 3) if both instances of alleged misconduct violate clear and unequivocal rules of law, whether the cumulative effect of the misconduct prejudiced Mr. Watts to such an extent that his trial was other than fair and impartial. *McClelland v. State*, 2007 WY 57, ¶ 27, 155 P.3d 1013, 1022 (Wyo. 2007).

## DISCUSSION

***Was Mr. Watts denied his right to a fair trial due to the cumulative effect of two acts of prosecutorial misconduct?***

[¶8] Mr. Watts alleges two instances of prosecutorial misconduct in the prosecutor's closing argument to the jury. Prosecutorial misconduct is "[a] prosecutor's improper or illegal act (or failure to act), esp. involving an attempt to persuade the jury to wrongly convict a defendant or assess an unjustified punishment." *Craft v. State*, 2013 WY 41,

2

¶ 13, 298 P.3d 825, 829 (Wyo. 2013) (citations omitted). "Prosecutorial misconduct claims are not intended to provide an avenue for tactical sandbagging of the trial courts, but rather, to address gross prosecutorial improprieties that have deprived a criminal defendant of his or her right to a fair trial." 21 Am. Jur. 2d *Prosecutorial Misconduct* § 429, at 545 (2008). Prosecutorial misconduct occurs when the prosecutor engages in conduct that he knew or should have known would deprive the defendant of the right to a fair trial. *Id.* at 544. It is against this backdrop that we examine Mr. Watts' allegations.

[¶9] First, Mr. Watts contends that the prosecutor's remark concerning the presumption of innocence was an incorrect statement of law. Second, Mr. Watts asserts that the prosecutor attempted to define reasonable doubt in contravention of this Court's previous rulings. We address each of Mr. Watts' contentions in turn.

## A. Presumption of Innocence

[¶10] Mr. Watts argues that the prosecutor incorrectly instructed the jury concerning the presumption of innocence when the prosecutor stated in his closing argument:

> We have proven our case. We have proven every element of this case beyond a reasonable doubt. ***And now when you go back to deliberate, that presumption of innocence no longer exists***. That veil in essence is lifted, and you are now perfectly able to find Mr. Watts guilty of the crime charged.

(Emphasis added.) Mr. Watts has met the first prong of the plain error test as the incident alleged as error is clearly reflected in the trial transcript. We next address whether the incident violated a clear and unequivocal rule of law.

[¶11] Prosecutors are afforded wide latitude in crafting their closing arguments. *Burton v. State*, 2002 WY 71, ¶ 50, 46 P.3d 309, 321 (Wyo. 2002) (Voigt, J., dissenting). However, a prosecutor is not permitted to inhibit an accused's right to the presumption of innocence. *Condra v. State*, 2004 WY 131, ¶ 17, 100 P.3d 386, 390-91 (Wyo. 2004). The defendant "retains a presumption of innocence throughout the trial process[,]" *Martinez v. Court of Appeal of Cal., Fourth Appellate Dist.*, 528 U.S. 152, 162, 120 S.Ct. 684, 691, 145 L.Ed.2d 597 (2000), which "survives until a guilty verdict is returned." *Portuondo v. Agard*, 529 U.S. 61, 76, 120 S.Ct. 1119, 1129, 146 L.Ed.2d 47 (2000) (Stevens, J., concurring). It is the jury, not the prosecutor, which determines when the presumption of innocence has been rebutted by credible evidence establishing guilt beyond a reasonable doubt.

[¶12] The comments made by the prosecutor in this case are similar to those made by an Oklahoma prosecutor, who stated:

3

I submit to you, under the law and the evidence, that we are in a little different position today than we were when we first started this trial and it was your duty at that time, under the law of this land, as you were being selected as jurors, to actively in your minds presume that man over there not to be guilty of the offense of rape in the first degree, but, you know, things have changed since that time. ***I submit to you at this time, under the law and under the evidence, that that presumption has been removed, that that presumption no longer exists, that that presumption has been removed by evidence and he is standing before you now guilty.***

*Mahorney v. Wallman*, 917 F.2d 469, 471 (10th Cir. 1990) (emphasis added). In a habeas corpus proceeding, the Tenth Circuit determined that the prosecutor's statements were improper, stating:

> We consider the prosecutor's comments impermissible because they undermined two fundamental aspects of the presumption of innocence, namely that the presumption (1) remains with the accused throughout every stage of the trial, including, most importantly, the jury's deliberations, and (2) is extinguished only upon the *jury's* determination that guilt has been established beyond a reasonable doubt.

*Id.* at 471 n.2. The Tenth Circuit's holding is echoed in Wyoming's pattern jury instructions, which provide:

> Th[e] presumption of innocence continues with the defendant through all the stages of the trial and until the case has been finally submitted to the jury and ***until the jury has found that this presumption has been overcome by evidence in the case convincing you of his guilt beyond a reasonable doubt***.

Wyo. Crim. Pattern Jury Instructions 1.03 (2014) (emphasis added). Our legal standard clearly establishes that the presumption of innocence remains with the accused until the jury concludes that a conviction is warranted beyond a reasonable doubt. *See Coffin v. United States*, 156 U.S. 432, 453, 15 S.Ct. 394, 403, 39 L.Ed. 481 (1895) ("The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law."). The prosecutor violated a clear and unequivocal rule of law when he stated otherwise in closing argument. Prosecutorial misconduct occurred when the prosecutor declared to the jury that the presumption of innocence "no longer exists."

4

## B. Reasonable Doubt

[¶13]  In his next assignment of error, Mr. Watts argues that the prosecutor committed misconduct when he defined reasonable doubt for the jury.  In his closing argument, the prosecutor stated:

> Ladies and gentlemen, the State does have to prove its case beyond a reasonable doubt, but it is not beyond all doubt.  It is not an impossible burden.  It is the same burden in every State in the nation, Federal Court, State Courts.  We know people are convicted fairly frequently on this burden of proof beyond a reasonable doubt.

> What you do is you go back in the jury room, and if you believe that he committed the crime, as the evidence strongly suggests he did it -- we have proven he did it, and you find him guilty, if you have a reasonable doubt, then he is not guilty.

> But the doubt has to be reasonable.  It has to be based on what arose out of this trial.  It can't be a hunch it [sic].  It can't be well a possibility.

> I was thinking about an example of what would not be, you know, reasonable doubt.  You see the people who commit crimes, long-haired, and they've got a big beard and everything.  They come to court and they have a suit and tie on.  They're clean shaven, great hair cut.  That is not reasonable -- that is not reasonable doubt.  That is not reasonable doubt.

> A hunch is [not] a reasonable doubt.  A vague possibility is not reasonable doubt.  Go on the evidence.  The evidence corroborates Ms. Lynch's version of events on January 9, 2014, Ernest Ray Watts caused these injuries to Diana Lynch.

Again, Mr. Watts has established the first prong of the plain error test.  We must therefore determine whether the prosecutor's statements concerning reasonable doubt transgressed a clear and unequivocal rule of law.

5

[¶14]   Courts and commentators have struggled with the question of whether reasonable doubt should be defined for a jury.  Those in favor of defining the term contend that the burden of proving a crime beyond a reasonable doubt is a cornerstone of our criminal justice system, and that instructing the jury on the definition of reasonable doubt preserves the defendant's constitutional right to a fair trial.[1]  Note, *Reasonable Doubt: An Argument Against Definition*, 108 Harv. L. Rev. 1955, 1958 (1995) (citing *Commonwealth v. Young*, 317 A.2d 258, 262-63 (Pa. 1974)); Henry A. Diamond, Note, *Reasonable Doubt: To Define, or Not to Define*, 90 Colum. L. Rev. 1716, 1719 (1990) (citing *United States v. Pepe*, 501 F.2d 1142, 1143 (10th Cir. 1974)).  According to these authorities, the term "reasonable doubt" must be defined because its meaning is not so "commonplace, simple, and clear that [it] is self-evident to a jury."  Diamond, *supra*, at 1719 (citing *Lansdowne v. State*, 412 A.2d 88, 93 (1980)).  Those authorities opposing an instruction defining reasonable doubt assert that the term is self-explanatory, and that attempts at definition are not only unhelpful and ineffective, but often lead to confusion which increases the risk that "a reasonable doubt instruction will deviate from the required burden of proof."  *Reasonable Doubt: An Argument Against Definition*, *supra*, at 1957.  A third approach leaves the decision of whether to give an instruction defining reasonable doubt to the sound discretion of the trial court.  "These courts have acknowledged the arguments on both sides and seem to have declared a stalemate."  *Id*. at 1959.  One court explained that the trial court occupies the central role of instructing the jury, and thus, the trial judge should determine which "choice among acceptable linguistic alternatives" is appropriate.  *Id.* (citing *United States v. Olmstead*, 832, F.2d 642, 646 (1st Cir. 1987)).

[¶15] Like many courts, we have repeatedly addressed the question of whether a reasonable doubt instruction is appropriate.  *Solis v. State*, 2013 WY 152, ¶¶ 45-49, 315 P.3d 622, 632-33 (Wyo. 2013); *Rivera v. State*, 987 P.2d 678, 680-81 (Wyo. 1999); *Marquez v. State*, 941 P.2d 22, 24-25 (Wyo. 1997); *Collins v. State*, 854 P.2d 688, 699 (Wyo. 1993); *Blakely v. State*, 542 P.2d 857, 861 (Wyo. 1975); *Cosco v. State*, 521 P.2d 1345, 1346-47 (Wyo. 1974); *Bentley v. State*, 502 P.2d 203, 206-08 (Wyo. 1972); *Alcala v. State*, 487 P.2d 448, 460 (Wyo. 1971); *State v. Goettina*, 61 Wyo. 420, 465-67, 158

---

[1] The Modern Federal Jury Instructions define reasonable doubt as:

> [A] doubt based upon reason and common sense.  It is a doubt that a reasonable person has after carefully weighing all of the evidence.  It is a doubt which would cause a reasonable person to hesitate to act in a matter of importance in his or her personal life. . . .  A reasonable doubt is not a caprice or whim; it is not a speculation or suspicion.  It is not an excuse to avoid the performance of an unpleasant duty.  And it is not sympathy.

Henry A. Diamond, Note, *Reasonable Doubt: To Define, or Not to Define*, 90 Colum. L. Rev. 1716, 1726 n. 87 (1990) (quoting 1 L. Sand, J. Siffert, W. Loughlin & S. Reiss, *Modern Federal Jury Instructions* § 4.01 (1989)).

P.2d 865, 882-83 (1945); *State v. Eldredge*, 45 Wyo. 488, 21 P.2d 545, 547-48 (1933); *Claussen v. State*, 21 Wyo. 505, 133 P. 1055, 1056 (1913). And, as with many other courts and commentators that have grappled with this issue, our precedent in this area is inconsistent. We have alternated between discouraging a reasonable doubt instruction, *Eldredge*, 21 P.2d at 547-48; *Claussen*, 133 P. at 1056; *Goettina*, 158 P.2d at 882-83; to enjoining such an instruction altogether, *Blakely*, 542 P.2d at 861; to relaxing our prohibition and allowing some explanation of reasonable doubt when instructing the jury, *Rivera*, 987 P.2d at 680-81; *Solis*, 2013 WY 152, ¶¶ 45-49, 315 P.3d at 632-33.

[¶16] We first addressed the question of whether a reasonable doubt instruction is appropriate in *Claussen*. In that case, the defendant requested that the trial court give an instruction to the jury defining reasonable doubt, and the court refused. *Id.*, 133 P. at 1056. On appeal, the defendant argued that it was error for the trial court not to give his proposed instruction. This Court stated: "In our judgment there is no definition of 'reasonable doubt' which would convey to a juror's mind any clearer idea than the term itself." *Id.* The Court stopped short of precluding a reasonable doubt instruction altogether, finding instead: "[T]he definition requested failed to define 'reasonable doubt,' or make its meaning any clearer to the jury than the phrase itself, and for that reason the court did not err in refusing to give it." *Id.* In *Eldredge*, this Court went a step further, advising courts to refrain from giving an instruction defining reasonable doubt. 21 P.2d at 547-48. There, we reasoned that "courts in the endeavor to explain the expression 'reasonable doubt,' have occasionally led juries into mazes of subtlety and casuistry in which they were lost themselves, and into which the minds of plain men are incapable of following them[.]" *Id.* at 547 (internal quotation marks and citation omitted). We continued on this path for many years, advising courts not to define reasonable doubt, but refusing to find a per se error when courts did define the term. *Alcala*, 487 P.2d at 460; *Goettina*, 158 P.2d at 882-83.

[¶17] We became more adamant with our decision in *Bentley*. There we cited, with approval, an Oklahoma case which held that it was error to give an instruction which attempted to define reasonable doubt. *Bentley*, 502 P.2d at 206-07 (citing *Wilson v. State*, 403 P.2d 262, 264 (Okla. Crim. App. 1965)). While not reversing the conviction based on the trial court's instruction to the jury defining reasonable doubt,[2] this Court did declare that "[t]he phrase 'reasonable doubt' is self-explanatory and definitions do not

---

[2] The reasonable doubt instruction given by the trial court read:

> THE COURT INSTRUCTS THE JURY that a reasonable doubt is such a doubt as exists in the mind of a reasonable man after a full, free and careful examination and comparison of all the evidence. It must be such a doubt as would cause a careful considered and prudent man to pause and consider before acting in the grave and most important affairs of life.

*Bentley*, 502 P.2d at 206.

7

clarify its meaning but rather tend to confuse a jury. Instructions defining it are unnecessary and should not be given." *Id.*, 502 P.2d at 207.

[¶18] With our decision in *Cosco*, we firmly established the impropriety of giving a confusing jury instruction defining reasonable doubt. In that case, the trial court defined reasonable doubt for the jury over the objection of the defendant. *Cosco*, 521 P.2d at 1346. The instruction read:

> The rule which clothes every person accused of crime with the presumption of innocence, imposes upon the State the burden of establishing his guilt, beyond a reasonable doubt. To establish the guilt of the defendant beyond all reasonable doubt, is not meant that such guilt shall be established to an absolute certainty. Absolute certainty in the establishment of any fact is rarely attainable and never required in Courts of Justice.

*Id.* Relying on our decision in *Bentley*, we reversed the conviction, finding that the trial court erred when it gave the instruction. However, the Court stopped short of holding that giving a reasonable doubt instruction constituted error per se, and instead asserted that "[o]ur disposition of this case should make it clear that hereafter our court will consider it reversible error to give a **confusing** instruction defining reasonable doubt." *Cosco*, 521 P.2d at 1346 (emphasis added).

[¶19] The Court then decided *Blakely* and *Collins*, in which we concluded that giving any instruction defining reasonable doubt was prohibited. *Blakely*, 542 P.2d at 861; *Collins*, 854 P.2d at 699. In both cases, we relied on *Cosco*, without recognizing the limitations we placed on our holding in that case. Nevertheless, both *Blakely* and *Collins* imposed a prohibition against giving an instruction defining reasonable doubt. *Blakely*, 542 P.2d at 861 (holding that "to have given the instruction would be an attempt to partially define reasonable doubt. It is prohibited by *Cosco*[.]"); *Collins*, 854 P.2d at 699 ("The trial court faced reversal if it gave the instruction on the definition [of reasonable doubt] in light of *Cosco*.").

[¶20] We softened our stance in *Rivera*. There the defendant appealed his conviction, arguing that the prosecutor improperly instructed the jury by defining reasonable doubt during *voir dire*. *Rivera*, 987 P.2d at 680. The prosecutor stated:

> Beyond a reasonable doubt is a term that the Court and the attorneys do not define for the jury. It's up to you to define what that means. There are certain perimeters that the Judge will instruct you on, but beyond a reasonable doubt is

8

not the same thing as beyond all doubt. It's not the same thing as beyond a shadow of a doubt.

Would you all agree that proving something beyond all doubt or beyond a shadow of a doubt would be an impossible task? Does everyone realize that?

Nothing could be proven beyond any doubt whatsoever, and so the State's burden of proof is not beyond any doubt or beyond all doubt or beyond a shadow of a doubt; it's beyond a reasonable doubt. So if you have a doubt that's a reasonable doubt, doubt that's reasonable in nature at the conclusion of this trial, you need to find the Defendant not guilty. If you have no reasonable doubts at the end of the trial, then you have to find him guilty.

*Id.* Citing *Alcala*, which was decided before *Cosco*, *Blakely* and *Collins*, we resolved that "an explanation that the prosecution's burden of proof is not to establish guilt to an absolute certainty" is acceptable. *Rivera*, 987 P.2d at 680. We found, in *Rivera*, that the prosecutor did not define the term "reasonable doubt," but instead "merely explained that the prosecution's burden of proof was not beyond all doubt or beyond a shadow of a doubt." *Id.* at 681.

[¶21] Our holding in *Rivera* led to our most recent decision addressing whether instructing a jury on the definition of reasonable doubt is appropriate. In *Solis*, the prosecutor made the following statement in closing:

First off, you have to know whose [sic] the burden of proof is, and I think by now it's been drilled to your head that it's the State's burden of proof. Okay. Well, that doesn't mean a whole lot unless you know what the burden of proof is. It's one of beyond a reasonable doubt. And I told you this in *voir dire* in the opening. It is the highest burden that any party will face in any courtroom in the United States. And for obvious reasons. It should be. It should be.

But it's not an insurmountable burden. The State of Wyoming—you are not permitted to attempt to define what "beyond a reasonable doubt" is. It is what it states. But sometimes it helps to know what something isn't to understand what it is.

9

It is not proof beyond all doubt. It is not proof to a mathematical certainty. And certainly it is not the State's obligation to prove the complete impossibility of [the Defendant's] innocence. You may think to yourself, "Wait a minute. So we can potentially be convicting someone who is not guilty?" No. That's not what it says at all. It just says proof beyond a reasonable doubt.

So what does that mean? How do you make that decision? You do it just like [you do] in your everyday lives when you decide to go to the store, when you decide to believe this friend and not that friend when they are telling you different stories. You use your everyday common sense to determine: Does this make sense? Is what the State's saying reasonable? Is what the defense claims, is that reasonable? If it's not reasonable, you disregard it, just like you do in your everyday lives.

2013 WY 152, ¶ 19, 315 P.3d at 627-28. While we recognized that a prosecutor commits misconduct when he defines reasonable doubt for the jury, we found, in line with *Rivera*, that the prosecutor in *Solis* did not define the term, but simply explained that the burden of proof does not require the prosecutor to establish guilt to an absolute certainty. *Solis*, 2013 WY 152, ¶ 46, 315 P.3d at 632. Thus, in *Solis*, we found no error based on the prosecutor's statements involving reasonable doubt. *Id.* at ¶ 48, 315 P.3d at 633.

[¶22] Although we could not fault counsel for failing to discern the line between defining reasonable doubt and explaining the State's burden of proving its case beyond a reasonable doubt, here the prosecutor crossed well into the territory of defining reasonable doubt when he stated: "But the doubt has to be reasonable. It has to be based on what arose out of this trial. It can't be a hunch it [sic]. It can't be well a possibility." *See Douglas v. Hendricks*, 236 F.Supp.2d 412, 434 (D.N.J. 2002) (finding that an instruction declaring that a reasonable doubt is not a "hunch" or "mere possibility" defined the term reasonable doubt for the jury). Further, the prosecutor's commentary describing his "example" of what would not constitute reasonable doubt could do nothing but confuse the jury.[3] *Cosco*, 521 P.2d at 1346 ("[H]ereafter our court will consider it

---

[3] I was thinking about an example of what would not be, you know, reasonable doubt. You see the people who commit crimes, long-haired, and they've got a big beard and everything. They come to court and they have a suit and tie on. They're clean shaven, great hair cut. That is not reasonable -- that is not reasonable doubt. That is not reasonable doubt.

reversible error to give a confusing instruction defining reasonable doubt."). Thus, the prosecutor transgressed a clear and unequivocal rule of law when he defined reasonable doubt for the jury in his closing argument. *Solis*, 2013 WY 152, ¶ 46, 315 P.3d at 632 ("To be sure, it is error for a prosecutor to attempt to define 'reasonable doubt' for the jury." (citing *Blakely*, 542 P.2d at 861)). The prosecutor's statement was improper, and one which he should have known would deprive Mr. Watts of the right to a fair trial. He therefore committed misconduct when he defined reasonable doubt in this closing argument.

[¶23] Cumulative error occurs when "two or more individually harmless errors ha[ve] the potential to prejudice the defendant to the same extent as a single reversible error." *Guy v. State*, 2008 WY 56, ¶ 45, 184 P.3d 687, 701 (Wyo. 2008) (quoting *McClelland*, 2007 WY 57, ¶ 27, 155 P.3d at 1022). In reviewing for cumulative error, we consider only those matters which we have concluded constitute error. *Id.* We reverse a conviction only when the accumulated effect of the errors "constitutes prejudice and the conduct of the trial is other than fair and impartial." *Alcala*, 487 P.2d at 462.

[¶24] While Mr. Watts has established that the prosecutor committed two errors which transgressed clear and unequivocal rules of law, the accumulated effect of these errors was not prejudicial. The statements made by the prosecutor were limited in scope, and confined to closing arguments. "In general, we are reluctant to find plain error in closing arguments lest 'the trial court become [] charged with an adversary responsibility to control argument even when objection is not taken by the opposing attorney.'" *Sanderson v. State*, 2007 WY 127, ¶ 37, 165 P.3d 83, 93 (Wyo. 2007) (citations omitted). In fact, the prosecutor's statements encompassed less than thirty lines in a trial transcript of over 500 pages. *See id.* (The prosecutor's actions are evaluated "within the context of the entire record and the argument as a whole."). Moreover, the State produced extensive competent evidence establishing Mr. Watts' guilt. Ms. Lynch testified to Mr. Watts' assault on her, stating that she remembers "being punched in the face" by Mr. Watts. The State presented the testimony of Dr. Kirk Bollinger, Ms. Lynch's emergency room physician, who stated that Ms. Lynch's injuries were "consistent with multiple direct blunt blows to the face." Ms. Lynch's surgeon also testified that her injuries were "more consistent with a scenario where multiple blows versus a single blow [occurred]." This overwhelming evidence was contrary to Mr. Watts' testimony that the injuries suffered by Ms. Lynch were caused by a plant falling on her face.

[¶25] The district court also properly instructed the jury on both the presumption of innocence and reasonable doubt. The court instructed:

> The law raises no presumption against the defendant, but
> rather the presumption of law is in favor of his innocence.

In order to convict the defendant of the crime charged, every material and necessary element to constitute such a crime must be proved beyond a reasonable doubt.

If the jury has reasonable doubt on any necessary element, it is your duty to give the benefit of such doubt to the defendant and acquit him. This presumption of innocence is not merely a matter of form, which the jury may disregard at his pleasure, but rather it is part of the law of the land.

It is a right guaranteed by that law to every person accused of a crime. This presumption of innocence continues with the defendant through all stages of the trial and until the case has been finally submitted to the jury and until the jury has found that this presumption has been overcome by the evidence in the case convincing you of his guilt beyond a reasonable doubt.

The district court cautioned the jurors that the arguments of counsel were not to be considered as evidence in the case: "As to any statement made by counsel in explanation of argument concerning the facts in this case, you must not regard such a statement as evidence." We assume that the jury followed the court's instruction, and found Mr. Watts guilty based on the evidence presented rather than the improper, but isolated, comments made by the prosecutor. *Earley v. State*, 2011 WY 164, ¶ 11, 267 P.3d 561, 564 (Wyo. 2011) (citing *Marquez v. State*, 12 P.3d 711, 717 (Wyo. 2000); *Burke v. State*, 746 P.2d 852, 857 (Wyo. 1987)). Mr. Watts was not prejudiced by the prosecutor's improper statements. His cumulative error claim must therefore fail.

## *CONCLUSION*

[¶26] The prosecutor's statement in closing argument that "the presumption of innocence no longer exists" and his attempt to define "reasonable doubt" constituted prosecutorial misconduct. However, the prosecutor's statements did not cumulatively prejudice Mr. Watts. We therefore affirm Mr. Watts' conviction.