BURKE, Justice.
[¶1] Appellant, Erin T. Osterling, was convicted of delivery of a controlled substance, methamphetamine, in violation of Wyo. Stat. Ann. § 35-7-1031(a)(i). He contends the prosecutor committed misconduct, resulting in denial of his right to a fair trial. We affirm.
ISSUE
[¶2] Appellant presents one issue:
Was Mr. Osterling denied his right to a fair trial and materially prejudiced due to prosecutorial misconduct during closing argument?
FACTS
[¶3] The Division of Criminal Investigation (DCI) organized a controlled buy from Mr. Osterling by George Cantrall, a confidential informant. Several law enforcement officers participated in the operation: Special Agent Justin Mathson of the DCI, Officer Jeffrey Chad Leichty of the Evanston Police Department, and Deputy Brandon Nelson of the Uinta County Sheriff's Department. Prior to the controlled buy, Deputy Nelson interviewed Mr. Cantrall, searched Mr. Cantrall and his vehicle, and provided funds to be *252 used in the controlled buy. Mr. Cantrall was fitted with a wire and was observed by Deputy Nelson as he drove to Mr. Osterling's house. After arriving at the house, but prior to exiting his vehicle, Mr. Cantrall talked briefly through his passenger window to Parker Austin, who had just left Mr. Osterling's house. Special Agent Mathson and Officer Leichty observed Mr. Cantrall's brief interaction with Mr. Austin.
[¶4] Mr. Cantrall spent approximately four minutes in Mr. Osterling's house before leaving. While in the home, Mr. Cantrall observed Mr. Osterling packaging methamphetamine into plastic baggies. He proceeded to purchase methamphetamine from Mr. Osterling. After Mr. Cantrall exited the house, Special Agent Mathson followed him to the police department. Upon arriving at the police department, Mr. Cantrall turned over the suspected methamphetamine to Deputy Nelson. Deputy Nelson conducted a post-buy interview of Mr. Cantrall and also conducted a strip search of Mr. Cantrall. Subsequent testing revealed that the substance provided by Mr. Cantrall was, in fact, methamphetamine.
[¶5] As a result of these events, the State charged Mr. Osterling with delivery of a controlled substance in violation of Wyo. Stat. Ann. § 35-7-1031(a)(i) (LexisNexis 2015). He pled not guilty and the case proceeded to trial. At trial, the State presented testimony from Mr. Cantrall, the three law enforcement officers involved in the controlled buy, and a forensic chemist with the Wyoming State Crime Laboratory. Mr. Osterling did not testify or call any witnesses on his behalf.
[¶6] The jury determined that Mr. Osterling was guilty of delivery of a controlled substance. He was sentenced to 18 to 48 months in prison. This appeal followed.
STANDARD OF REVIEW
[¶7] In raising his claim of prosecutorial misconduct, Mr. Osterling takes issue with several statements made by the prosecutor during closing argument. He did not object to any of those statements at trial. As a result, we review for plain error. Watts v. State , 2016 WY 40, ¶ 6, 370 P.3d 104, 106 (Wyo. 2016). "Plain error exists when: 1) the record is clear about the incident alleged as error; 2) there was a transgression of a clear and unequivocal rule of law; and 3) the party claiming the error was denied a substantial right resulting in material prejudice." Id. We do not reverse the judgment "unless a reasonable probability exists, absent the error, that the appellant may have enjoyed a more favorable verdict." Guy v. State , 2008 WY 56, ¶ 9, 184 P.3d 687, 692 (Wyo. 2008).
DISCUSSION
[¶8] Mr. Osterling contends the prosecutor committed misconduct during her rebuttal closing argument by misquoting Mr. Cantrall's testimony, and by attributing a statement to Mr. Cantrall that had not been introduced at trial. He asserts that the jury's verdict rested, in large part, on its assessment of Mr. Cantrall's credibility, and he claims the prosecutor's remarks unfairly impacted the jury's consideration of Mr. Cantrall's credibility. According to Mr. Osterling, the prosecutor's misstatements resulted in prejudice because "[o]ther than Mr. Cantrall's testimony, there was no direct evidence that Mr. Osterling delivered methamphetamine to Mr. Cantrall."
[¶9] The State contends the prosecutor's statements do not amount to misconduct. According to the State, the prosecutor made "reasonable inferences" from Mr. Cantrall's testimony. The State also contends, however, that even if the prosecutor's statements amount to misconduct, Mr. Osterling has not demonstrated that the statements resulted in prejudice. The State notes that Mr. Cantrall and the investigating officers testified in detail regarding the circumstances surrounding the transaction with Mr. Osterling, and that the jury was able to evaluate Mr. Cantrall's credibility based on his testimony.
[¶10] We decide claims of prosecutorial misconduct by reference to the entire record, and where the claim is one of improper argument, we consider it in the context of the entire argument. Law v. State , 2004 WY 111, ¶ 30, 98 P.3d 181, 191 (Wyo. 2004). "We are reluctant to find plain error in closing arguments lest the trial court becomes required *253 to control argument because opposing counsel does not object." Carrier v. State , 2017 WY 88, ¶ 59, 400 P.3d 358, 370 (Wyo. 2017) (quoting Trujillo v. State , 2002 WY 51, ¶ 4, 44 P.3d 22, 24 (Wyo. 2002) ). We have previously recognized that "Counsel are allowed wide latitude during the scope of their closing arguments, and a prosecutor may comment on all of the evidence in the record and suggest reasonable inferences from that evidence." Teniente v. State , 2007 WY 165, ¶ 30, 169 P.3d 512, 524 (Wyo. 2007) ; see also ABA Standards for Criminal Justice 3-6.8 (2015). We have also recognized, however, that a prosecutor may not mislead the jury or intentionally misstate the evidence. Id. ; Gonzalez-Ochoa v. State , 2014 WY 14, ¶ 16, 317 P.3d 599, 604 (Wyo. 2014) (citing Dysthe v. State , 2003 WY 20, ¶ 24, 63 P.3d 875, 885 (Wyo. 2003) ).
[¶11] Mr. Osterling contends the prosecutor committed misconduct, first, when, during her rebuttal closing argument, she stated:
So Mr. Cantrall was asked, point blank, "Did you arrange to set Mr. Osterling up?"
"No."
"Did you get drugs from Mr. Austin?"
"No."
"Did he leave drugs for you at Mr. Osterling's house?"
"No."
That's the evidence before you. And you solely are the individuals who will weigh whether that's credible or not. But that's the testimony and evidence that's been presented.
[¶12] There is no question that the prosecutor made the statement during her rebuttal closing argument and Mr. Osterling has satisfied the first prong of the plain error test. It is also undisputed that the questions and answers quoted by the prosecutor do not appear in the record. The prosecutor never asked the specific questions during trial and Mr. Cantrall never provided those specific answers during his testimony. Mr. Osterling contends that the misquotes arise to the level of prosecutorial misconduct because they are misstatements of the evidence and likely misled the jury. He does not address whether the substance of the purported testimony is supported by reasonable inferences from Mr. Cantrall's trial testimony. The State asserts that misconduct did not occur because the substance of the purported testimony reflects reasonable inferences arising from the evidence that was presented. It appears to ascribe no significance to the fact that the prosecutor explicitly told the jury that Mr. Cantrall was asked the questions "point blank" and that his answers to those questions were "the testimony and evidence that's been presented."
[¶13] We agree with the State that reasonable inferences from the evidence support the State's argument that Mr. Cantrall did not set up Mr. Osterling, did not obtain drugs from Mr. Austin, and did not have Mr. Austin leave drugs at Mr. Osterling's house. However, those reasonable inferences do not permit a prosecutor to tell a jury that specific testimony occurred when it did not. Based upon this record, it is clear that the prosecutor misstated the evidence. Neither party addressed whether the prosecutor's misstatement was intentional; however, even if it was, the error did not prejudice Mr. Osterling.
[¶14] We note, initially, that the prosecutor's misstatements were made during rebuttal closing arguments and in response to defense counsel's closing remarks suggesting that Mr. Cantrall was lying and that he had arranged to set up Mr. Osterling. Although the specific questions and answers quoted by the prosecutor do not appear in the record, a similar line of questioning did occur. During direct examination, the prosecutor elicited the following testimony from Mr. Cantrall:
PROSECUTOR: Had you and Parker Austin talked about-anything about the fact that you were going to [Mr. Osterling's] that day?
MR. CANTRALL: No, I didn't ... Parker doesn't-he didn't have a phone and things like that at the time. When I saw Parker, it would strictly be at pool leagues or in passing.
PROSECUTOR: Did you ever arrange for Parker to leave anything for you at Mr. Osterling's house?
MR. CANTRALL: No. No.
*254 ...
PROSECUTOR: Had you been in [Mr. Osterling's] house before?
MR. CANTRALL: Yes.
PROSECUTOR: Did you leave anything in his house for you to take with you that day?
MR. CANTRALL: I did not.
[¶15] Additionally, Mr. Cantrall provided detailed testimony regarding the purchase of methamphetamine from Mr. Osterling. He testified that he communicated in person and over the phone with Mr. Osterling to arrange a time to purchase methamphetamine. He explained to the jury that, after these communications, he contacted the Division of Criminal Investigation and expressed his willingness to participate in a controlled buy. The law enforcement officers involved in the controlled buy testified that, prior to the operation, they searched Mr. Cantrall and his vehicle and found no controlled substances in his possession. With respect to his interaction with Mr. Austin outside of Mr. Osterling's house, Mr. Cantrall indicated that their conversation was very brief:
[A]s I was pulling in [to Mr. Osterling's driveway], I saw [Mr. Austin] leaving the house on foot and I pulled in and just said, "How you doing," you know, blah, blah. "How's things been going?" And he was kind of in a hurry, so he just said, "Good. I'm in a hurry, so I got to get going" and that was the tail end of that conversation.
Officer Leichty testified that he observed the conversation between Mr. Cantrall and Mr. Austin, which occurred through the passenger side window of the vehicle that Mr. Cantrall was driving. Officer Leichty was closest to the passenger side of the vehicle and had a clear view of the interaction. His testimony indicated that he did not observe Mr. Austin and Mr. Cantrall exchange anything during their brief interaction. While Mr. Cantrall may not have been asked the specific questions challenged in this appeal, the evidence supports the State's argument that Mr. Cantrall did not set up Mr. Osterling or obtain drugs from Mr. Austin.
[¶16] Mr. Osterling also contends the prosecutor committed misconduct when she misattributed a statement to Mr. Cantrall during rebuttal closing argument. The prosecutor stated:
... [Mr. Cantrall] is going to get called a snitch. The fact that he was telling on other people was going to be an issue in this courtroom. He was going to be accused of setting Mr. Osterling up; that they had some kind of beef; that there was somebody else involved because that's what Mr. Osterling is left to argue to you.
And what Mr. Cantrall responded to me was, again, very simple. "Why does the reason I was doing this have anything to do with the fact that he handed me drugs in his house when I agreed to buy them from him?"
The statement attributed to Mr. Cantrall, however, does not appear anywhere in the record, and we have difficulty imagining a scenario in which such testimony would have been admissible. Nevertheless, the statement was not prejudicial.
[¶17] During trial, Mr. Cantrall offered several motives for his cooperation with law enforcement. He testified that he began participating in controlled buys because he had lost his mother to drug use. He also said that he wanted to help his roommate abate his drug use. Under cross-examination, he admitted that he assisted with controlled buys for money to pay for fines that he incurred for an anger evaluation following an aggravated assault charge. During closing argument, defense counsel referred to Mr. Cantrall as a "snitch" and accused him of setting Mr. Osterling up because of a previous falling out between them. He attempted to undermine Mr. Cantrall's credibility in part by discussing motive:
[Mr. Cantrall] tells you that he's not getting anything out of it except money; but on the first day of the trial, Agent Mathson said he was getting paid but he was also working off some of his problems. So you have some inconsistency there as to what our snitch is doing, what our person who sells out his friends for his own advantage.
*255 Might be some other motives out there for doing this. This is a person that wants to-seems to want to do anything to his own advantage. Help the cops. Go and get your friends off the street. Maybe they don't pay so much attention to you and your illegal activities.
...
You also learned that he and [Mr. Osterling] had had some problems at work, that had created some animosity. Animosity, maybe, to the point that our snitch wanted to set his former friend [Mr. Osterling] up. I don't know. But I think that there might be other reasons out there just-beyond just wanting to be a good scout and help the community out.
[¶18] The prosecutor responded to that argument in rebuttal with the improper statement. When viewed in context, however, the statement appears to be rhetorical in nature and nothing more than an inartful response to argument from defense counsel. The prosecutor's remarks were merely intended to persuade the jury that Mr. Cantrall's motive was irrelevant. The validity of the point communicated by the rhetorical question did not depend on whether Mr. Cantrall made the statement.
[¶19] The jury was afforded ample opportunity to evaluate Mr. Cantrall's credibility during his testimony at trial. It was instructed that it was the sole judge of credibility and that any statement made by counsel in explanation or argument was not a statement of evidence. In the context of the entire record, we find no reasonable probability that the prosecutor's statements affected the jury's evaluation of Mr. Cantrall's credibility, or that the outcome of the trial would have been different absent the prosecutor's statements.
[¶20] Affirmed.