KAUTZ, Justice.
[¶1] A jury found Jacob Alan Buszkiewic guilty of two counts of strangulation of a household member. Mr. Buszkiewic asserts the prosecutor made several statements during closing argument that amounted to misconduct and deprived him of a fair trial.
[¶2] Finding no error, we affirm.
ISSUES
[¶3] Mr. Buszkiewic states the following issues on appeal:
I. Did the prosecutor's repeated use of the "golden rule" argument subvert the objectivity of the jury and materially prejudice Mr. Buszkiewic?
II. Did the prosecutor's repeated reference to the complaining witness as being the "victim," referring to the defense theory as "victim blaming," and referring to what the defendant didn't say to police, and didn't explain, result in cumulative error and materially prejudice Mr. Buszkiewic?
FACTS
[¶4] Mr. Buszkiewic and Sarah Oakland were involved in an on-again-off-again romantic relationship. In April 2016, Ms. Oakland, who resided in Sheridan, Wyoming, spent a couple of weeks with Mr. Buszkiewic at his house in Laramie, Wyoming. On April 29, 2016, the couple visited several bars, with their final stop of the night being Bud's Bar in West Laramie. They stayed at the bar after it closed and played cards with the bartender until approximately 5:00 a.m. on April 30, 2016.
[¶5] When Mr. Buszkiewic and Ms. Oakland returned to Mr. Buszkiewic's house, he accused her of flirting with the bartender. He forced her into the bedroom where he placed her on the bed and slapped her several times. Mr. Buszkiewic then let her up, and she tried to reason with him. The same thing happened a few more times, with Mr. Buszkiewic taking Ms. Oakland into the bedroom, placing her on the bed, slapping her and then letting her up. During two of the slapping incidents, he also put his hands around her throat and squeezed, cutting off her airway and causing pressure in her eyes, nose and head.
[¶6] Ms. Oakland eventually ran out the front door and flagged down a neighbor who was pulling his car out of his driveway. She told the neighbor that someone was after her and she needed to get away. Mr. Buszkiewic left the house when Ms. Oakland did, so she asked the neighbor to take her back to the house to get her things. Mr. Buszkiewic returned to the house about the same time as Ms. Oakland. The neighbor initially parked in the driveway of Mr. Buszkiewic's house to wait for Ms. Oakland, but then decided it was not safe to remain there, so he drove away and called 911. In the meantime, Mr. Buszkiewic took Ms. Oakland to the bedroom one more time and slapped her. She was able to gather her belongings and leave after the *1276 last incident. Ms. Oakland stopped at a convenience store for gas, and the attendant noticed that she looked frightened and watchful as she pumped the gas.
[¶7] Laramie police officers responded to the 911 call. They asked Mr. Buszkiewic what happened, and he said that he and his girlfriend had an argument but denied it had turned physical. The officers learned that Ms. Oakland had contacts in Sheridan, so they asked the authorities there for assistance in locating her.
[¶8] Ms. Oakland drove to Sheridan and went to an urgent care facility. A physician's assistant took her history and examined her. Ms. Oakland had injuries to her face, eardrum and head, and bruising on her arms. Her voice was hoarse and she had petechiae in one eye, which the physician assistant found consistent with Ms. Oakland's report that she had been strangled. The medical staff contacted law enforcement, and Sheridan police officers interviewed Ms. Oakland and took photographs of her injuries.
[¶9] The Sheridan authorities reported the results of their investigation to the Laramie police, and Mr. Buszkiewic was arrested. At the time of his arrest, Mr. Buszkiewic admitted that his altercation with Ms. Oakland had turned physical, but claimed she struck him first and he had merely retaliated. The Albany County prosecutor charged Mr. Buszkiewic with two counts of strangulation of a household member in violation of Wyo. Stat. Ann. § 6-2-509(a)(i) (LexisNexis 2017). The matter was tried to a jury, which found him guilty of both counts. After the district court sentenced Mr. Buszkiewic, he appealed to this Court.
STANDARD OF REVIEW
[¶10] Mr. Buszkiewic claims the prosecutor committed several instances of misconduct during her closing argument to the jury. Because he did not properly object to the prosecutor's statements during trial, our appellate review is limited to a search for plain error. Hamilton v. State, 2017 WY 72, ¶ 7, 396 P.3d 1009, 1011 (Wyo. 2017) (citing Watts v. State , 2016 WY 40, ¶ 6, 370 P.3d 104, 106 (Wyo. 2016) ). To establish the district court committed plain error, Mr. Buszkiewic must show: "1) the record is clear about the incident alleged as error; 2) the district court transgressed a clear and unequivocal rule of law; and 3) he was denied a substantial right resulting in material prejudice." Sindelar v. State, 2018 WY 29, ¶ 16, 416 P.3d 764, 768 (Wyo. 2018). See also , Johns v. State , 2018 WY 16, ¶ 12, 409 P.3d 1260, 1264 (Wyo. 2018).
[¶11] This Court generally hesitates to find plain error in closing argument because the trial court should not be placed in " 'a position of having to sua sponte challenge remarks of counsel when there is otherwise no objection thereto.' " Webb v. State, 2017 WY 108, ¶ 28, 401 P.3d 914, 925 (Wyo. 2017) (quoting Solis v. State , 2013 WY 152, ¶ 40, 315 P.3d 622, 632 (Wyo. 2013) ). However, even though prosecutors are given wide latitude in arguing their cases, there are boundaries. Carroll v. State , 2015 WY 87, ¶ 32, 352 P.3d 251, 259 (Wyo. 2015). "When determining whether those boundaries have been crossed, we consider the entire argument, and not simply sentences and phrases that may be out of context." Webb, ¶ 28, 401 P.3d at 925.
DISCUSSION
Golden Rule Argument
[¶12] Mr. Buszkiewic claims the prosecutor made an improper "golden rule"[1]
*1277 argument, by asking the jurors to place themselves in Ms. Oakland's position, when she said:
... Where we've gotten into and off on a-on a tangent, so to speak, is how many times she was slapped. Well, I would submit to you, in your common affairs, if you were being slapped and you were in that situation, would you remember how many times and counting [sic] how many times? You think you know. Because it's important when we come in to testify and talk to you, we've got to know how many times you got hit. You aren't going to remember in your ordinary affairs the details, especially if you've been up all night and you had been drinking and then you come in here and you want me to recount how many times it happened.
[¶13] A golden rule[2] argument is " '[a] jury argument in which a lawyer asks the jurors to reach a verdict by imagining themselves or someone they care about in the place of the injured plaintiff or crime victim.' " Brown v. State, 2014 WY 104, ¶ 18, n.5, 332 P.3d 1168, 1174, n.5 (Wyo. 2014) (quoting Black's Law Dictionary 713 (8th ed. 2004) ). See also, 75A Am. Jur. Trial § 547 (2018). "Golden rule arguments are widely recognized as improper." Brown, ¶ 20, 332 P.3d at 1175 (internal quotation marks omitted). See also, Law v. State, 2004 WY 111, ¶¶ 31-37, 98 P.3d 181, 192-94 (Wyo. 2004) (prosecutor improperly questioned the jury panel in voir dire about how they would feel in the victim's place). A golden rule argument is "impermissible because it encourages the jurors to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." 75A Am. Jur. Trial § 547 (2018).
[¶14] However, an argument which asks the jurors to draw inferences from the evidence based on how a reasonable person would act if placed in the position of the victim is not an improper golden rule argument. Similarly, rhetorical questions which ask the jurors to use their common sense and life experiences to weigh the trial evidence do not violate the rule even though the prosecutor may ask the jury what they would do in similar circumstances. See State v. Williams, 172 Conn.App. 820, 162 A.3d 84, 94-95 (2017) ; State v. Bell, 283 Conn. 748, 931 A.2d 198, 212-15 (2007).
[¶15] For example, in Williams, 162 A.3d at 94-95, the court concluded that the prosecutor's statements in closing argument about what the jury may or may not have done in the victim's position was not an improper golden rule argument. The prosecutor's comments were not designed to encourage the jury to decide the case based upon their sympathy for the victim, but to "remind the jurors that they must review the evidence objectively and from the perspective of a reasonable person[.]" Id. In Bell, 931 A.2d at 212-15, the Connecticut Supreme Court stated that the prosecutor's request that the jurors put themselves in the place of a witness when evaluating her credibility was not an appeal to the jurors' emotions or sympathies. Instead, the prosecutor was properly asking the jury to "draw inferences from the evidence that had been presented at trial ... based on the jurors' judgment of how a reasonable person would act under the specified circumstances." Id. at 214-15.
[¶16] In this case, the prosecutor was not making an appeal for the jury to decide the case based upon sympathy or bias rather than the evidence. Instead, she requested that the jury consider the evidence using their life experiences and common sense. When she asked the jurors whether they would remember the number of times they had been slapped, she was requesting that they look at the evidence through the lens of their ordinary affairs. In other words, the prosecutor was simply making the point that it is human nature not to remember all of the *1278 details of a violent encounter, such as the number of slaps.
[¶17] Furthermore, part of the defense strategy was to question Ms. Oakland's credibility and the reasonableness of her actions. Defense counsel repeatedly questioned her about inconsistencies in her statements about the details of the assaults (including the number of times Mr. Buszkiewic had slapped her), why she did not try to escape sooner, why she came back to the house after she had escaped the first time, why she did not immediately seek medical treatment, and why she did not contact law enforcement in Laramie. The prosecutor's argument about the victim's inability to remember the precise number of times she was slapped was not an improper golden rule argument but, rather, a response to defense counsel's strategy. Mr. Buszkiewic has, therefore, failed to establish plain error in this regard.
[¶18] Although he does not raise a separate issue, Mr. Buszkiewic also asserts that the prosecutor wrongfully included herself with the jury by using personal pronouns when describing how the fact finder should determine credibility. For example, the prosecutor made statements like: "I ask of you, if I'm in a verbal fight, why would I run after someone down the street to go after them?"; "[i]n this particular case, you and I-and you will be the judge of the character."; and "[i]f I was trying to break down and determine who's telling the truth, you've got to lead through this as to who is believable and who is credible in this case."
[¶19] Obviously, the prosecutor's statements included personal pronouns and incorrect grammar. This Court has said it is improper for a prosecutor to "express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence of the guilt of the defendant." Carrier v. State, 2017 WY 88, ¶ 60, 400 P.3d 358, 370 (Wyo. 2017) (discussing ABA Standards for Criminal Justice and citing Trujillo v. State, 2002 WY 51, ¶ 5, 44 P.3d 22, 24-25 (Wyo. 2002) and Watkins v. State, 2016 WY 108, ¶ 14, 383 P.3d 1080, 1083 (Wyo. 2016) ). However, in evaluating whether a prosecutor actually expressed her personal beliefs or opinions to the jury, we have to consider the statements in context. See, e.g. , White v. State, 2003 WY 163, ¶¶ 28-32, 80 P.3d 642, 653-55 (Wyo. 2003) ; Mazurek v. State, 10 P.3d 531, 542 (Wyo. 2000).
[¶20] Although the prosecutor's use of personal pronouns was not ideal, see Mintun v. State, 966 P.2d 954, 960-61 (Wyo. 1998), when viewed in context, it is clear she was not attempting to sway the jury with her personal beliefs about the credibility of the witnesses or Mr. Buszkiewic's guilt. Rather, she was emphasizing that the jury should consider what a reasonable person would do under the same circumstances. The prosecutor made sure to emphasize to the jurors that they were the judges of the credibility of the witnesses. In one instance, she said "you and I" are judges of the witnesses' character, but she quickly corrected that statement, telling the jury that it was the judge of the witnesses' character. Furthermore, the jury instructions clearly informed the jurors that they were "the exclusive judges of the facts and of the effect and value of the evidence" and they must not regard any statement by counsel as evidence. When viewed in context, the prosecutor's statement did not violate the rule against inserting her personal beliefs into the trial evidence.
Reference to Ms. Oakland as "the victim"
[¶21] Mr. Buszkiewic asserts that, by referring to Ms. Oakland as the victim, the prosecutor violated his right to be presumed innocent. The record clearly shows that the prosecutor, at times, referred to Ms. Oakland as the victim. Because we are reviewing this claim for plain error, we must determine whether the prosecutor's references to the "victim" violated a clear and unequivocal rule of law. This requirement recognizes that the trial judge should interject himself into the argument to stop or prevent a certain violation of a clear rule even when no attorney objects at trial. Given there was no objection to the prosecutor's use of the term victim, reversal is required only if there was a clear and unequivocal rule of law prohibiting use of that term in the manner it was used here. Although there is a clear and unequivocal rule of law that a defendant is presumed to be innocent, see, e.g ., *1279 Watts , ¶ 11, 370 P.3d at 107, it does not follow that any trial judge or attorney would or should know that a prosecutor's reference to the complaining witness as the "victim" constitutes a violation of the presumption of innocence. It is incumbent on Mr. Buszkiewic to demonstrate that a clear rule prohibiting use of the term "victim" exists or that use of the term clearly and unequivocally violates the principle that the defendant is presumed to be innocent. Mr. Buszkiewic fails to do either.
[¶22] Mr. Buszkiewic does not direct us to any precedent unequivocally (or otherwise) holding it is improper for the prosecutor to refer to the complaining witness as the victim of a crime. We touched on the issue in Sanchez v. State, 2011 WY 77, ¶¶ 24-27, 253 P.3d 136, 143-44 (Wyo. 2011). In Sanchez , the district court made the following statement during voir dire : "The victim is [AI]." Id., ¶ 25, 253 P.3d at 144 (emphasis omitted). Performing a plain error review, we were not convinced that any error occurred when the district court referred to the complaining witness as the victim. "[I]t is clear the district court was simply describing the alleged roles of the major identified players in the case[.]" The district court did not tell the potential jurors that, "as a matter of law, it had to consider AI to be a victim[.]" Id., ¶ 26, 253 P.3d at 144.
[¶23] The same is true here. The prosecutor was simply referring to Ms. Oakland's role in the criminal proceedings-she was alleged to be the victim of two strangulations by Mr. Buszkiewic. The district court and the prosecutor made it very clear through the jury instructions and argument that it was the jury's role to determine whether Mr. Buszkiewic had committed the alleged crimes against Ms. Oakland. The jury was also informed that Mr. Buszkiewic was presumed to be innocent, the State had the burden of proving all the elements of the charges beyond a reasonable doubt, and statements of counsel were not evidence.
[¶24] Mr. Buszkiewic cites an article from the National Crime Victim Law Institute-M. Garvin and S. LeClair, NCVLI NEWS, Use of the Term "Victim" in Criminal Proceedings (11th ed. 2009, updated 2014), https://law.lclark.edu/live/files/21940-use-of-the-term-victim-in-crim-proc11th-edpdf as support for his contention that it was error for the prosecution to use the term victim. A careful reading of that article shows that the authors actually agree with using the term "victim" to describe the complaining witness in a criminal case. Their review of the caselaw also confirms that courts do not routinely find error based upon the prosecution's use of the term "victim," even when there is a question as to whether a crime was committed:
2. Prosecution's use of the term "victim."
Generally, a prosecutor may not express his or her personal opinion on a defendant's guilt. Defendants often object to a prosecutor's use of the term "victim", arguing that it reflects the government's belief that the defendant is guilty. Specifically, they argue that the jury will give special weight to this opinion based on the prestige of the prosecutor and the fact-finding facilities available to the office. However, courts have rejected this argument based on jurors' knowledge of the criminal justice system and the role of prosecutors in the criminal trial. Any reference by the prosecutor to a victim will be viewed as merely part of the state's contention that, based on the state's evidence, the complainant was a victim of the alleged crimes. For these reasons, courts have concluded that it is not reasonably likely that a jury would interpret the prosecutor's use of the term to reflect a personal belief in a defendant's guilt. Even courts that have found that the prosecutor's use of the term "victim" was in error have concluded that a standard jury instruction-that the comments of prosecutor are not evidence and should be disregarded-will remove any prejudice that may arise.
Id. at 3 (footnotes and citations omitted). See also , Weatherly v. State, 283 S.W.3d 481, 486 (Tex. Ct. App. 2009) (stating that the prosecutor's use of the word "victim" would not "generally be understood as anything other than the contention of the prosecution"). Mr. Buszkiewic has failed to identify a clear and unequivocal rule of law prohibiting the State's use of the term "victim." Consequently, he cannot show the district court committed plain error by allowing the prosecutor to use the term.
*1280 Calling the Defense Theory "Victim Blaming"
[¶25] Mr. Buszkiewic claims the prosecutor committed misconduct by referring to the defense strategy as "victim blaming." Mr. Buszkiewic points to several instances in closing argument where the prosecutor referenced blaming the victim:
1) At the beginning of closing argument, the prosecutor stated:
Throughout the questioning of witnesses in this trial and as the introduction of the evidence, there's been a lot of blaming o[f] the victim in this case. And this case is about the Defendant's actions and what he did on April 30th.
It appears from counsel for the Defendant that there is a presumption that because we can't understand how the victim acted on that day and didn't do what we think would be reasonable, therefore, this victim's not telling the truth and she's not credible. However, I would submit to you that right now, let's focus for a moment on the Defendant's actions and then we'll get to the blaming of this victim for why she didn't do what we somehow believe she should have done in this case. (emphasis added).
2) Later in closing argument, the prosecutor reviewed a number of questions the defense asked Ms. Oakland on cross examination which suggested that she did not act reasonably in response to being physically assaulted by Mr. Buszkiewic. The prosecutor stated:
We sat here and we heard Sarah, the victim, testify time after time a question asked of her: Why didn't you leave? Why did you keep talking to the Defendant? Why didn't you return to the Pierce [Street]? Why did you walk into the house and grab your clothes? What option did you leave? Why not go to the cops? Why didn't you tell [the neighbor] what he [Mr. Buszkiewic] had done and strangled you? Why didn't you tell the people what happened?
This is called victim blaming. Think about it. What the defense is doing is trying to move this case away from the Defendant's actions and move it to the victim as to why she didn't act a certain way [.] (emphasis added).
3) The prosecutor discussed the evidence of Ms. Oakland's and Mr. Buszkiewic's injuries and a police officer's testimony about how the evidence established that Mr. Buszkiewic was the primary aggressor in the conflict. The prosecutor stated:
Where you have the photographs, the photographs of the Defendant which were taken that same day after the incident and you have the injuries of Sarah. Look at those photographs. Look at those injuries. Go back to the primary aggressor.
As you heard testimony from Officer McAlmond, that's what you determined as to who was the primary aggressor. You look to offensive wounds and defensive wounds. This is somebody who's being struck and somebody who is being-that-you're defending and the wounds that you're trying to defend someone off of you. You heard what Officer McAlmond said and your best memory of what he said. Those are the Defendant's actions, not the victim, and how we've turned this to the victim in blaming the victim. (emphasis added).
Mr. Buszkiewic claims that, in these statements, the prosecutor tried to inflame the jury against him by improperly inserting her personal opinion that Ms. Oakland was a victim and the defense was unfairly blaming her. He asserts the phrase "victim blaming" has negative connotations and is commonly used by news media.
[¶26] Often, "victim blaming" is a phrase used when "people blame someone for getting themselves hurt or into a bad situation." www.urbandictionary.com. As Mr. Buszkiewic points out, the phrase is used in the news media with negative connotations. See, e.g. , M. Schroeder, The Psychological Impact of Victim Blaming and How to Stop It, U.S. NEWS & WORLD REPORT (Apr. 19, 2016), https://health.usnews.com/wellness/articles/2016-0419/the-psychological-impact-of-victim-blaming-and-how-to-stop-it and V. Junkin, Victimized Twice: Accuser Blamed in Rape Case, USA TODAY (May 10, 2014), *1281 https://www.usatoday.com/story/news/nation/2014/05/10/victimized-twice-accuserblamed-in-rape-case/8955585/. However, in this case, the prosecutor clearly explained to the jury what she meant when she used the term "victim blaming." The prosecutor did not use this term in an inflammatory sense and did not intimate that the defendant blamed the victim for "getting [herself] hurt." Rather, the state used the term to address the defense's focus on the actions of the alleged victim, questioning why she did or did not take certain actions.
[¶27] This Court has said that "[a]rguments which are calculated to appeal to the jury's prejudice or passion are improper because they pose a risk that the accused may be convicted for reasons wholly irrelevant to his guilt or innocence." Strange v. State, 2008 WY 132, ¶ 6, 195 P.3d 1041, 1044 (Wyo. 2008) (quoting Burton v. State, 2002 WY 71, ¶ 15, 46 P.3d 309, 314 (Wyo. 2002) ). See also , Hill v. State, 2016 WY 27, ¶ 45, 371 P.3d 553, 565 (Wyo. 2016). However, " '[i]n presenting closing argument, the prosecutor is entitled to reflect upon the evidence and to draw reasonable inferences from that evidence in order to assist the jury in its function.' " Hamilton, ¶ 14, 396 P.3d at 1014 (quoting English v. State , 982 P.2d 139, 148 (Wyo. 1999) ).
[¶28] The prosecutor in this case explained throughout her argument that she was addressing defense counsel's repeated questioning of Ms. Oakland about her behavior. As we explained in ¶ 17 above, the record amply demonstrates that one of defense counsel's strategies was to undermine Ms. Oakland's credibility by portraying her actions as unreasonable or her testimony as unbelievable. The prosecutor, while perhaps ill-advised in using a term that often has inflammatory connotation, simply tried to persuade the jurors that their focus should be on Mr. Buszkiewic's actions. In doing so, she related her argument to the charged offenses and the evidence produced at trial. When viewed in its entirety, the prosecutor's argument was not designed to inflame the passions or prejudice of the jury or to encourage it to decide the case on anything other than the evidence presented at trial. Furthermore, when viewed in context, the prosecutor's "victim blaming" terminology focused specifically on evidence, and directed the jury to consider that evidence. Even if the term often has an inflammatory connotation, in this case the jury was not misdirected away from the evidence, and was not encouraged to decide the case based on passion. Mr. Buszkiewic has not shown that the district court committed plain error by failing to stop the prosecution from referring to the defense strategy as "victim blaming."
Comments on Defendant's Silence
[¶29] Mr. Buszkiewic asserts that the prosecutor committed misconduct by alluding in her closing argument to what he did not tell the officers. He claims this argument violated his right to remain silent under the United States and Wyoming constitutions and improperly shifted the burden of proof to the defense. U.S. Const. amend V ; Wyo. Const. art. 1, § 11. The statements that Mr. Buszkiewic asserts offended the constitutional provisions were:
[THE PROSECUTOR]: We weren't there. However, she [Ms. Oakland] was there, and this is what she came in here to tell this story and stood up to what was being asked of her each time as to why she didn't do something. Why didn't the Defendant leave? Why didn't he walk out? Did anybody ask that? Why didn't he tell that officer-you'll hear the tape. Why didn't he tell the officer what happened? Why did he say he just had a verbal-
[DEFENSE COUNSEL]: Objection, Your Honor. I think that's going beyond the scope.
THE COURT: Sustained.
[¶30] Before we address the merits of this issue, we need to discuss the standard of review in a little more detail. Mr. Buszkiewic asserts that we should apply the harmless error standard of review because he objected below. Defense counsel objected to the prosecutor's statement as "going beyond the scope." The objection was sustained, but defense counsel did not ask that any particular statement be stricken from the record.
[¶31] Wyoming Rule of Evidence 103 provides in pertinent part as follows:
*1282 (a) Effect of Erroneous Ruling. -Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
(1) Objection-In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context[.]
In Leach v. State, 2013 WY 139, ¶ 30, 312 P.3d 795, 801 (Wyo. 2013), we explained that Rule 103
describes three of the most important tools in the trial lawyer's toolbox: the objection, the motion to strike, and the offer of proof. As Mueller and Kirkpatrick explain in their treatise:
In appropriate cases, a motion to strike is as essential under Fed.R.Evid. 103 as an objection in preserving rights to argue error in admitting evidence. In substance, a motion to strike is a delayed objection. A party is not always entitled to a delay, but can make a motion to strike if the court admits evidence provisionally or conditionally and if it later appears that it should not come in, or if the evidence comes in so quickly that there was not time for an advance objection. In such cases the adverse party must move to strike or lose the objection.
1 Mueller & Kirkpatrick, supra, § 1:6 (footnotes omitted).
[¶32] In the case at bar, defense counsel objected that the prosecutor's statement was "beyond the scope." The objection was actually sustained; consequently, Mr. Buszkiewic cannot say the district court committed error in that regard. Defense counsel did not ask that any particular offending statement be stricken from the record, so the jury was not advised about what statement or statements they should not consider. We are, likewise, unsure of what statement or statements defense counsel and/or the district court found objectionable as "beyond the scope."
[¶33] In any event, Mr. Buszkiewic's objection at trial was not the same as the error he claims on appeal. He made no objection that the prosecutor's statements infringed upon his right to remain silent. Without a proper objection, the district court did not have an opportunity to address and, if appropriate, correct the error. "Where 'the objection was not originally made on the ground now urged, the argument is without force. ... The objector should lay his finger on the particular point intended to be raised so that the trial court will have notice and an opportunity to cure the alleged error.' " Sanderson v. State, 2007 WY 127, ¶ 13, 165 P.3d 83, 88 (Wyo. 2007) (quoting Valerio v. State , 429 P.2d 317, 319 (Wyo. 1967), which quoted Murdock v. State, 351 P.2d 674, 679 (Wyo. 1960) ). Given Mr. Buszkiewic failed to preserve his claim of error, our review is limited to a search for plain error. Sanderson, ¶ 16, 165 P.3d at 89.
[¶34] The record clearly shows the prosecutor's argument that Mr. Buszkiewic did not make certain statements to the authorities, satisfying the first part of the plain error test. We, therefore, turn to the second part of the plain error test-whether the district court violated a clear and unequivocal rule of law by allowing the prosecutor's statements.
[¶35] The State has the burden of proving all the elements of the charged crime and may not shift that burden to the defendant. See Hamilton, ¶ 16, 396 P.3d at 1015 ; Harris v. State, 2008 WY 23, ¶ 17, 177 P.3d 1166, 1171 (Wyo. 2008). In meeting that burden, the State cannot compel a criminal defendant to be a witness against himself. U.S. Const. amend V ; Wyo. Const. art. 1, § 11. A criminal defendant, therefore, has the right to remain silent when questioned by officers and cannot be compelled to testify against himself. Cazier v. State, 2006 WY 153, ¶ 13, 148 P.3d 23, 28 (Wyo. 2006).
[¶36] When a defendant refuses to speak to authorities, the prosecutor may not refer to his silence to infer that he is guilty. Collins v. State, 2015 WY 92, ¶¶ 28-29, 354 P.3d 55, 62-63 (Wyo. 2015) (discussing Tortolito v. State, 901 P.2d 387, 391 (Wyo. 1995) and Spinner v. State, 2003 WY 106, ¶¶ 14-15, 17, 75 P.3d 1016, 1021-23 (Wyo. 2003) ). However, when a defendant makes a statement to law enforcement and that statement is admitted into evidence at trial, the prosecutor may comment upon the contents *1283 of the defendant's statement. Carothers v. State, 2008 WY 58, ¶ 16, 185 P.3d 1, 12 (Wyo. 2008). Consequently, we must consider the context of the prosecutor's statements when evaluating whether the defendant's right to silence was violated. Collins, ¶ 24, 354 P.3d at 61 ; Cazier , ¶ 13, 148 P.3d at 28-29.
[¶37] The context of the prosecutor's statement about why Mr. Buszkiewic did not "tell the officer what happened" shows the prosecutor was simply reviewing the two statements Mr. Buszkiewic made to law enforcement. During his first encounter with the police on the morning of April 30, 2016, Mr. Buszkiewic said his argument with Ms. Oakland was only verbal. He specifically denied the argument had "turned physical." In Mr. Buszkiewic's second statement to police, which he made when he was arrested, he admitted he had "retaliated" physically after she hit him. The full context of the prosecutor's discussion during closing argument of Mr. Buszkiewic's inconsistent statements was:
Why didn't the Defendant leave? Why didn't he walk out? Did anybody ask that? Why didn't he tell that officer-you'll hear the tape. Why didn't he tell the officer what happened? Why did he say he just had a verbal-
[Objection of "beyond the scope" sustained]
Why didn't he-why did he tell the officer that she was from North Dakota. Listen to the tape. Why didn't all this come out? So then he gets interviewed again and this time we hear on the tape ... the second time when he came back after learning of the injuries and that [Ms. Oakland] had went [sic] to Sheridan, as I said in opening and as the tape said. Listen to that tape again, what the Defendant said. The Defendant, again, he indicated in the second tape-and I-don't take my words; listen to the tapes of what he said. And he said in his own words, yeah, we had a physical [sic]. She hit me-okay-and I retaliated.
[¶38] When considered in context, the prosecutor's rhetorical question to the jury about why Mr. Buszkiewic did not tell the officers what happened was meant to emphasize Mr. Buszkiewic's inconsistent statements to the police about whether his fight with Ms. Oakland had involved physical violence. The prosecutor was simply arguing the facts that were in evidence. See Carothers, supra . Mr. Buszkiewic's claim that the prosecutor improperly commented on Mr. Buszkiewic's Fifth Amendment rights is entirely spurious.
[¶39] Additionally, the State did not attempt to shift the burden to Mr. Buszkiewic. In fact, the prosecutor said in voir dire that the State had the burden of proof, and the district court instructed the jury that "[t]he law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence on the question of ... guilt or innocence." Mr. Buszkiewic, therefore, has not demonstrated that the district court violated a clear and unequivocal rule of law.
[¶40] Although not set out as a separate issue, Mr. Buszkiewic also maintains that the prosecutor committed misconduct by arguing that Ms. Oakland "stood up to what was being asked of her." He claims this statement inferred Ms. Oakland should be believed and it "presupposes that the questioning of the witness by the defense [was] improper." We could refuse to consider this issue because Mr. Buszkiewic does not cite any pertinent authority to support his argument. See, e.g. , Blevins, ¶ 22, 393 P.3d at 1254 (Wyo. 2017) ; Willey v. Willey, 2016 WY 116, ¶ 30, 385 P.3d 290, 299-300 (Wyo. 2016) (this Court may refuse to consider an issue not supported by cogent argument or citation to pertinent authority).
[¶41] Nevertheless, we can easily dispose of this argument for the same reasons discussed above-the context of the prosecutor's statement shows that she was discussing the evidence produced at trial. Of course, a prosecutor cannot personally vouch for the credibility of a witness. Hill, ¶ 53, 371 P.3d at 567 (citing Fennell v. State, 2015 WY 67, ¶ 31, 350 P.3d 710, 722 (Wyo. 2015) ). However, a prosecutor may review the evidence admitted at trial and suggest to the jury inferences based on that evidence. Hill, ¶ 55, 371 P.3d at 567 (citing Browder v. State, 639 P.2d 889, 893 (Wyo. 1982) ).
[¶42] The prosecutor's statement that Ms. Oakland "stood up to what was being asked *1284 of her" addressed Ms. Oakland's responses to defense counsel's cross-examination about why she did not take certain actions during and after Mr. Buszkiewic's physical assault of her. It was a reasonable inference based upon the evidence presented at trial. It was similar to the prosecutor's statement we approved of in Hill . In that case, the prosecutor stated that one of the witnesses "felt threatened for her family. She explained that threat on the stand very well." Hill, ¶ 52, 371 P.3d at 567. The appellant claimed the prosecutor impermissibly vouched for the credibility of the witness when he made that statement in closing argument. We ruled the statement was a proper response to defense counsel's suggestion that the witness's failure to tell the 911 operator that her family had been threatened by the defendant meant that she did not feel threatened. Id., ¶¶ 54-55, 371 P.3d at 567. Similarly, the district court in the case at bar did not violate a clear and unequivocal rule of law by allowing the prosecutor to argue that Ms. Oakland "stood up to" defense counsel's questions about why she did not take certain actions.
Cumulative Error
[¶43] Mr. Buszkiewic asserts that, even if no single error was sufficient to establish prejudice, the cumulative effect of the prosecutor's misconduct deprived him of a fair trial. " 'The purpose of evaluating for cumulative error is to address whether the cumulative effect of two or more individually harmless errors has the potential to prejudice the defendant to the same extent as a single reversible error.' " Sweet v. State, 2010 WY 87, ¶ 40, 234 P.3d 1193, 1207 (Wyo. 2010) (quoting Guy v. State, 2008 WY 56, ¶ 45, 184 P.3d 687, 701 (Wyo. 2008) ). "When making this evaluation, we consider only matters that were determined to be errors, and not any matter assigned as error but determined not to be erroneous." Sweet, ¶ 40, 234 P.3d at 1207. See also, In re KMO, 2012 WY 99, ¶ 37, 280 P.3d 1203, 1215 (Wyo. 2012). Given we do not find any error in the issues raised by Mr. Buszkiewic, there is no basis for finding cumulative error.
CONCLUSION
[¶44] The prosecutor did not make improper golden rule arguments during her closing argument. She properly commented on the evidence and asked the jurors to weigh the witnesses' testimony using their common sense and life experiences. In addition, the prosecutor did not commit misconduct in closing argument by referring to Ms. Oakland as the "victim," characterizing the defense strategy as "victim blaming," or calling attention to Mr. Buszkiewic's inconsistent statements to law enforcement. Because the district court did not commit any errors, there is no cumulative error.
[¶45] Affirmed.

Mr. Buszkiewic also equates a golden rule argument with a "reptilian brain" argument. The two arguments are similar, but are not equivalent. Like the golden rule argument, the reptilian brain argument plays on the jurors' emotions, especially their response to fear. L. Sirico, Jr., The Trial Lawyer and the Reptilian Brain: A Critique, 65 Clev. St. L. Rev. 411, 412 (2017) explains the reptilian brain argument:
When humans feel threatened, the reptilian brain takes charge and controls human conduct. Therefore, if a lawyer can make a juror feel threatened, the lawyer appeals to the juror's primitive reptilian brain and virtually assures a victory. Thus, a lawyer's argument ... intensif[ies] the juror's fear that his or her physical survival is at stake as well as that of the juror's family and community. If the lawyer uses this strategy successfully[,] ... the jurors will punish [the] opponent by convicting him or her[.]
Obviously, an argument designed to appeal to the jury's fears is improper. See, e.g. , Hopkinson v. State, 632 P.2d 79, 147 (Wyo. 1981). However, Mr. Buszkiewic cites no authority explaining the reptilian brain argument. He provides no cogent or logical argument indicating how the prosecutor's argument improperly invoked the jurors' fears. Consequently, we will not further discuss this characterization of the prosecutor's argument. See Blevins v. State, 2017 WY 43, ¶ 22, 393 P.3d 1249, 1254 (Wyo. 2017) (refusing to consider argument not supported by cogent argument or pertinent authority).

The golden rule is said to originate in Luke 6:31 of the New Testament: "And as ye would that men should do to you, do ye also to them likewise." Stein Closing Arguments , Golden Rule, § 1:82, n.1 (2017-18).